500 So.2d 266 (1986)
TELCON, INC., and Underwriters Adjusting Co., Appellants,
v.
Leonard WILLIAMS, Appellee.
No. BG-277.
District Court of Appeal of Florida, First District.
December 19, 1986.
Charles A. Williams, of Williams & Williams, Lake Worth, for appellants.
Laurence F. Leavy, of Mark Marks, P.A., North Miami, for appellee.
ZEHMER, Judge.
The employer and carrier appeal a workers' compensation order awarding claimant permanent total disability benefits, medical expenses, costs, and interest. They raise three issues, but only one warrants extensive discussion. They first argue that the deputy commissioner erred in finding claimant permanently and totally disabled due to injuries resulting from a compensable industrial accident and, in part, to injuries suffered in a subsequent automobile accident which occurred while claimant was on his way to receive authorized medical therapy related to the compensable injury. The question before us is whether the subsequent accident is compensable, i.e., did it arise out of and in the course of claimant's employment within the meaning of sections 440.02(6) and 440.09(1), Florida Statutes (1979)? We treat the case as governed by the statutes in effect on the date of the original injury.
Claimant initially suffered a herniated disc in an industrial accident on January 28, 1981. The employer and carrier accepted the accident as compensable and paid benefits. Throughout the remainder of 1981 and during 1982, claimant, who had not reached maximum medical improvement, continued under medical care and therapy. He attempted to return to work for the employer, but could not physically perform the duties of his employment, and in December 1982 was advised not to return.
*267 On February 14, 1983, claimant still had not reached maximum medical improvement and continued to receive medical treatment. While traveling in his car to the doctor's office to receive medical treatment, he suffered neck, head, and shoulder injuries when his vehicle was rear-ended. The physician he was to see, Dr. Lane, had been designated by the employer and carrier and approved by an order of the deputy commissioner. Dr. Lane, a neurosurgeon, testified that claimant had sustained a twelve percent permanent partial disability to the body as a whole as a result of the first accident. He further opined that following the second accident claimant had a thirty-five percent permanent partial impairment to the body as a whole attributable to back injuries from both accidents.
The deputy commissioner's order found, in part, that the automobile accident occurred while claimant was traveling to his doctor's office at the direction of his court-appointed physician; that an employment relationship between appellant and claimant continued to exist at the time of the accident; that the injuries sustained were in the course and scope of claimant's employment; that as a result of the injuries sustained in both accidents claimant cannot perform even light work without interruption; and that claimant has become totally and permanently disabled.
The employer and carrier argue that since claimant was told he "didn't need to come back" to work [R. 39], he was not an employee at the time of the automobile accident, and thus the injuries sustained in this accident did not arise out of and in the course of employment. We affirm the appealed order, holding that, regardless of the status of claimant's actual employment at the time of the second accident, that injury was incidental to claimant's previously existing employment relationship and therefore arose out of and in the course of that employment.
We agree with the parties that this precise question appears to be one of first impression under the Florida workers' compensation statute. Section 440.02(6), Florida Statutes (1979), provides:
The term `injury' means personal injury or death by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury....
Section 440.09(1), Florida Statutes (1979), states, in part:
Compensation shall be payable under this chapter in respect of disability or death of an employee if the disability or death results from an injury arising out of and in the course of employment... .
Finally, section 440.26(1), Florida Statutes (1979), includes a rebuttable presumption that "the claim comes within the provisions of this chapter." This presumption has been applied in determining whether an injury arises out of and within the course of employment, in part because of the general policy in workers' compensation cases that the statute is to be liberally construed in favor of the claimant. Cooper v. Stephens, 470 So.2d 852 (Fla. 1st DCA), rev. denied, 480 So.2d 1296 (Fla. 1985).
Our analysis begins with Taylor v. Dixie Plywood Company of Miami, 297 So.2d 553 (Fla. 1974), in which a similar fact pattern arose. The claimant in that case suffered a compensable industrial injury to his back and leg, and his supervisor authorized him to get medical treatment at the doctor's office. Claimant first went to his home, and after leaving home for the doctor's office he was in an automobile accident which caused the loss of his right eye. The employer controverted the second accident on the basis of deviation because claimant went to his home before proceeding to the doctor's office. The judge of the Industrial Claims and the Industrial Relations Commission agreed with the deviation argument and disallowed the claim. The Supreme Court reversed, finding that "the deviation, if any, was insubstantial under the circumstances." Taylor, 297 So.2d at 555. Justice Ervin further wrote for the court:
The material facts are that upon injury the claimant had been directed to go to *268 the doctor's office for examination and treatment of his leg. Compliance therewith was an activity within the scope of his employment. See 1 Larson, Workmen's Compensation, Sec. 13.13. It is uncontradicted that when he suffered the automobile accident resulting in loss of his eye claimant was on the way to the doctor's office.
297 So.2d 555.
Although essentially a deviation case, we find the quoted rationale of Taylor helpful in determining the scope of coverage under the cited statutory provisions. Since there was no deviation which caused the course and scope of employment to terminate, the injury sustained while traveling to the doctor's office for treatment of an industrial injury as directed by the employer was necessarily incidental to the employment, and therefore compensable.
Both parties have directed us to cases in other jurisdictions which have considered the compensability of similar second injuries. For example, in Taylor v. Centex Construction Co., 191 Kan. 130, 379 P.2d 217 (1963), the claimant suffered an industrial eye injury and received permission from the employer to visit the doctor. Upon leaving the doctor's office, claimant stopped at a service station to call his wife, had his truck serviced, ate lunch, and then proceeded to a tavern to buy a bottle of soda. While returning to his job site from the tavern, claimant suffered injuries in a motor vehicle accident. The lower court held that the injury did not arise out of and in the course of employment. On appeal this decision was reversed, and it was held that the Kansas workmen's compensation statute implies, as part of the employment relationship, a duty by the employer to provide medical treatment for industrial injuries. Should the employee refuse to reasonably comply with directions to obtain medical treatment, he risks loss of benefits. The court concluded that "[i]t would be folly to say that the claimant's trip going to and from the doctor's office did not `arise out of' the nature, conditions, obligations, or incidents of his employment." 379 P.2d at 221. See also Immer & Co. v. Brosnahan, 207 Va. 720, 152 S.E.2d 254 (1967); contra Kiger v. Idaho Corp., 85 Idaho 424, 380 P.2d 208 (1963).
In Laines v. Workmen's Compensation Appeals Bd., 48 Cal. App.3d 872, 122 Cal. Rptr. 139 (1975), claimant suffered two industrial injuries to his knee and was directed by his employer to seek medical treatment. While enroute from his attorney's office to an appointment for a medical examination in connection with the knee injury, claimant was injured when his motorcycle was hit by a truck. His claim for workmen's compensation benefits was denied. On appeal, the court noted that the California workmen's compensation statute required, as the predicate for establishing compensability, that (a) at the time of the injury, both the employer and employee were subject to the compensation provisions; (b) at the time of the injury, the employee was performing service growing out of and incidental to his employment and was acting within the course of his employment; and (c) the injury was proximately caused by the employment. The court then held that since the claimant was required by law to visit the examining physician, and the employer was required to provide such medical treatment and reimburse the claimant on a mileage basis for transportation expenses, the injury arose out of and in the course of employment.
Regarding the issue of causation, the fact that claimant's initial back injury, which was clearly compensable, did not contribute to causing the automobile accident and the resulting head, neck, and shoulder injuries is not controlling. In Laines the court carefully explained why:
On the question of causation in a case of this nature, Larson states that: "When an employee suffers additional injuries because of an accident in the course of a journey to a doctor's office occasioned by a compensable injury, the additional injuries are generally held compensable. If the journey takes place immediately after the first injury occurs, the chain of causation is most readily *269 visible, as when an employee was being rushed to a hospital following a compensable injury and sustained further injury when the ambulance was involved in a collision. But, quite apart from the element of immediacy, a fall or automobile accident during a trip to a doctor's office has usually been considered sufficiently causally related to the employment by the mere fact that a work-connected injury was the cause of the journey, without any necessity for showing that the first injury in some way contributed to the fall or accident. Of course, if the prior injury in any way contributes to the second accident, the case is that much stronger, as when pain or drugs or a weakened member may have played a part." [Italics added.] (1 Larson, The Law of Workmen's Compensation, § 13.13, ch. 3.)
Laines at 878-79, 122 Cal. Rptr. 139.
Consistent with this rationale, this court recently held that an injury to a claimant during a trip to his doctor's office for treatment of a prior compensable injury arises out of and is in the course and scope of his employment under the Florida statute. All American Wheel World, Inc., v. Gustafson, 499 So.2d 876 (Fla. 1st DCA 1986).
While we find these authorities persuasive, they do not fully answer the question here presented. In the cited cases, at the time of both injuries the respective claimants remained actively employed by the employer responsible for compensating the initial industrial injury. In the instant case the claimant, being temporarily disabled, had been told not to return to work several weeks before the automobile accident in dispute.
We hold, based on the rationale of the authorities discussed above, that the lack of an active employment relationship at the time of the subsequent accident does not take the resulting injury out of the statutory presumption and language defining compensability. The subsequent accident occurred while the claimant was on a trip that was incidental to the prior compensable injury. As Professor Larson explains, when an employee is injured because of an accident in the course of a trip to the doctor's office for authorized medical treatment for injuries sustained in a compensable accident, the additional injuries arise out of and in the course of employment. 1 Larson, Law of Workmen's Compensation, § 13.13, ch. 3. Larson's theory is premised on the "quasi-course of employment" concept. In testing compensability under that concept, "work connection is a meld of two elements: arising out of employment, and arising in the course of employment." Id. § 13.11(d). Larson further explains:
[T]he two elements of the test do not operate independently, whatever courts may say, but interact and produce a kind of composite work-connection test in which the two elements are merged. Thus, a strong "arising out of" element will make up for a weak "course" element, as when a person on his way to work before working hours and off the premises is injured by a source of harm emanating from the employment premises. Similarly a strong "course" element will make up for a weak "arising out of" element, as in the positional-risk cases.
Id.
Regardless of claimant's employment status, the second injury admittedly did not, in the strictest sense, occur during the course of active employment. Although the trip to the doctor's office took place outside the time and space limits of employment, it was nonetheless a "necessary [and] reasonable activit[y] that would not have been undertaken but for the compensable injury." Larson, § 13.11(d). In such a case, the chain of causation would be broken only by the intentional misconduct of the employee. Larson submits the following pair of principles as appropriate for determining whether the injury is compensable:
When the injury following the initial compensable injury arises out of a quasi-course activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that *270 activity, but only by intentional conduct which may be regarded as expressly or impliedly prohibited by the employer.
When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct.
Id. at § 13.11(d).
Larson's analysis is perfectly consistent with the theory of the Florida act. Under the facts of this case, the employer's obligation under the Workers' Compensation Act had not been terminated when the second injury occurred. First, claimant was unable to secure employment with the employer or anyone else; therefore, the provisions of section 440.15(7) and (8), Florida Statutes (1979), were inapplicable and did not terminate that obligation. Second, in Phillips v. Unicare Amelia Island, Inc., 458 So.2d 50 (Fla. 1st DCA 1984), rev. denied, 464 So.2d 555 (Fla. 1985), it was recognized that an employer's obligation to provide workers' compensation coverage may well continue beyond the date of termination of active employment.
In Phillips the employee resigned effective January 29, 1982. As of that date she was no longer on the payroll and lost all insurance coverage and other employee benefits. On February 15, 1982, she went to the employer's premises to pick up her last paycheck and while leaving was injured when a handrail gave way. The employee filed a negligence action against her former employer, and the employer defended on the ground that the workers' compensation act was her exclusive remedy. Affirming the summary judgment entered for the employer on this ground, we held that certain incidents of the employment relationship continued past the date of termination until the employee was paid, since payment was one of the recognized incidents of the employment contract. Although it could not be said that this claimant's injury occurred in the course of her employment in the traditional sense, clearly it arose out of that employment, i.e., as a necessary incident thereof.
When a claimant no longer in the active employment of the employer is injured in the course of traveling to authorized medical treatment of a compensable injury, the court is faced with a difficult policy choice in construing the statutory terms. On the one hand, the statute imposes upon the employer the cost of transportation for medical treatment, section 440.13(4), Florida Statutes (1979), and yet the employer cannot control the manner and route of the trip to insure that it is reasonably safe. On the other hand, the employee is required to comply with court-ordered medical treatment or risk losing benefits. Lobnitz v. Orange Memorial Hospital, 126 So.2d 739 (Fla. 1961). Under the principle that the worker's compensation statute should be liberally construed to effect coverage for the injured worker, Hacker v. St. Petersburg Kennel Club, 396 So.2d 161 (Fla. 1981), we conclude that the risk of injury in these circumstances must be borne by the employer.
In this case, as we have noted, the statutory obligation of an employer to provide medical treatment, including reimbursement for transportation by automobile, and for the claimant to accept such treatment, is a necessary incident of the employment contract, just as the obligation to pay wages was part of the employment contract in Phillips. Regardless of claimant's employment status, that obligation had not terminated when claimant was injured in the second accident. We therefore affirm the deputy commissioner's order awarding permanent total disability benefits as a result of the injuries sustained in the two accidents of January 28, 1981, and February 14, 1983.
The remaining two points raised by the employer and carrier are without merit. There is competent, substantial evidence in the record to support the deputy's finding that claimant was physically incapable of gainful employment and thus excused from a job search. Southland Corp. v. Hunt, 465 So.2d 1329 (Fla. 1st DCA 1985). We *271 note that two weeks prior to the automobile accident in question, claimant suffered another relapse and was unable to do even light work uninterruptedly.
The employer and carrier's third point, that the deputy erred in superimposing subsequent nonrelated injuries upon a compensable condition, is likewise without merit in view of the affirmance of the ruling that both injuries are compensable.
AFFIRMED.
BARFIELD, J., concurs with written opinion.
NIMMONS, J., dissents with written opinion.
BARFIELD, Judge, concurring:
In concurring with Judge Zehmer's opinion, I believe it is necessary that I point out the significant distinction between this case and Central Concrete Company, Inc. v. Harris, 475 So.2d 1300 (Fla. 1st DCA 1985), in which I participated and which was based in part on D'Angelo Plastering Company v. Isaac, 393 So.2d 1066 (Fla. 1980).
The claimant in Harris sought the assistance of an employee of the rehabilitation provider for the purpose of meeting a requirement of a new employer. Harris had to buy shoes, since he didn't own any, before he would be permitted to work at his new job. Buying a pair of shoes was not a requirement of his rehabilitation, but a function of daily living. The gratuitous offer of his rehabilitation counselor to drive him to the store on his day off, Saturday, was not mandated by the worker's compensation law or an order of a deputy commissioner as in the instance of the medical treatment in this case. That the rehabilitation counselor received a weekly transportation allowance from his employer was irrelevant to the issue of whether the claimant's need to buy a pair of shoes arose out of his previous employment.
I note that this court recently approved compensability in circumstances identical to this case except for the question of termination from employment which is not addressed in the opinion and, in my judgment, is irrelevant. All American Wheel World, Inc. v. Gustafson, 499 So.2d 876 (Fla. 1st DCA 1986).
NIMMONS, Judge, dissenting.
I respectfully dissent from the majority's opinion. I would reverse the deputy's order and hold that the claimant's injuries sustained in the automobile accident while on his way to the physical therapy appointment did not arise out of and in the course of his employment.
In my view, Taylor v. Dixie Plywood Company of Miami, Inc., 297 So.2d 553 (Fla. 1974), not only does not support the majority's holding, but, rather, suggests a contrary result. Of course, unlike the instant case, the claimant in Taylor was still actively employed by Dixie Plywood and had left the employer's warehouse with instructions to report to the doctor's office. Taylor first went home and then proceeded to the doctor's office and, while en route, was involved in an accident. The Supreme Court, as recognized by the majority opinion, held that the "deviation, if any, was insubstantial under the circumstances." Id. at 555. However, the clear indication from the rationale of the Taylor opinion is that the Court would not have found the injuries from the automobile accident to be compensable had Taylor's deviation been more substantial. Indeed, the Supreme Court stated:
Of course, if claimant had been shown to have deviated from the direct route to the doctor's office for some irrelevant, extraneous purpose  perhaps personal pleasure or personal business, e.g., to visit a bar, shoot pool, to shop, or for some other inconsistent personal purpose not incidentally germane to the trip to the doctor's office  the result might be different. But here the record discloses no such unreasonable or extraneous deviation for a personal purpose.
Id. at 556-557. Essentially, the ratio decidendi of the majority's opinion in the instant case is that the claimant need only show that he was on his way to the doctor for treatment when the accident occurred. Under the new rule adopted by the majority it apparently does not matter where the *272 claimant might have been immediately prior to his journey to the doctor's office; nor does it matter whether the second injury is an outgrowth or byproduct of the original compensable injury or is precipitated entirely by an outside force (e.g. the negligent driving of a motor vehicle by another person, as in the instant case); nor does it matter if the claimant no longer has any employment connection with the employer. If the Supreme Court in Taylor had intended to embrace the above new rule, the Court would have held in Taylor's favor for the sole reason that Taylor was on his way to the doctor's office when the accident occurred. But, as discussed above, that is not what the Supreme Court held.
Two Florida cases not mentioned in the majority opinion, are, although not on all fours with the instant case, deserving of comment. In D'Angelo Plastering Co. v. Isaac, 393 So.2d 1066 (Fla. 1980), the claimant was on crutches due to a compensable accident. He was struck by a vehicle while trying to cross a street. He asserted that the second accident was a direct and natural result of the first injury because he would have been able to avoid the vehicle had he not felt a sudden back pain from his first injury. The Supreme Court found that the injuries from the second accident were not compensable because such accident was not a direct and natural result of the first injury and that the negligence of the driver of the vehicle was an independent, intervening cause. The following observation made by the Court in D'Angelo is, I believe, instructive:
This is an unusual type of case. It is not a case in which the compensable injury allegedly was the medical cause of the claimant to fall, collapse, deteriorate, or otherwise suffer complication. It deals, instead, with a "miscellaneous consequence" having some causal connection with the compensable injury, an area of compensation law where, as one commentator puts it, "the difficulty of expressing a body of coherent principles is at the maximum." [footnote omitted]
Id. at 1067.
In Central Concrete Co., Inc. v. Harris, 475 So.2d 1300 (Fla. 1st DCA 1985), a rehabilitation provider, which was furnished pursuant to a previous compensation order by Harris' former employer, was transporting Harris to purchase a pair of shoes suitable for his new job when the vehicle in which Harris was riding was struck from the rear, injuring Harris' low back and exacerbating his earlier compensable back injury. This court reversed the deputy's finding that Harris's injuries from the second accident were compensable. Although recognizing that some injuries occurring while in rehabilitation may be compensable, we held in Central Concrete that the facts there failed to establish a causal relationship between the primary injury and the second injury.
Although it is apparent from Judge Zehmer's opinion that there is significant authority for his position, I believe the better course, and one which more nearly comports with Florida decisional and statutory authority, is to reverse the deputy's award on the ground that the claimant's injuries sustained in the second accident did not arise out of and in the course of his employment.
I would reverse.