525 So.2d 984 (1988)
Terry HONEYCUTT, Appellant,
v.
R.G. BUTLERS DAIRY and Whiting National Services, Appellees.
No. 87-467.
District Court of Appeal of Florida, First District.
May 20, 1988.
Rehearing Denied June 23, 1988.
Steven M. Dunn, of Dunn and Johnson, P.A., Miami, for appellant.
Claire Hamner, of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellees.
*985 MILLS, Judge.
Terry Honeycutt appeals from the denial by the Deputy Commissioner (D/C) of his claim for attendant care services from the date of his accident, 4 September 1979, to the present and continuing. We reverse.
On 4 September 1979, Honeycutt suffered a herniated disc when he was knocked down and stepped on by a cow in the course and scope of his employment with E/C. Initially, Honeycutt was placed in a back brace and ordered to maintain strict bed rest. From 4 September to 10 December 1979, it was the testimony of his treating orthopedic surgeon that Honeycutt required assistance with meals, bathing, ambulation, sanitary functions, and getting in and out of his brace, to the extent of three to four hours a day. On 10 December 1979, Honeycutt underwent the first of three operations on his back, in an attempt to perform a spinal fusion. Again, it was the testimony of his physician, Dr. Massam, that from 10 December 1979 to 10 March 1980, Honeycutt required eight hours per day of attendant care services, consisting of helping him in and out of bed, helping him with a complicated back brace, dressing him, bathing him, taking him to and from the bathroom, and massaging his legs, which due to the brace were subject to cramping. These same services were required to a lesser extent, four hours per day, from 10 March to 12 September 1980, according to Massam.
On 12 September 1980, Honeycutt underwent the second of his back surgeries. It was Massam's opinion that from 12 September to 12 December 1980, Honeycutt required six to eight hours per day of attendant care, consisting of help in applying and changing his TNS unit, administering his medications, getting him in and out of and supervising while he was in a whirlpool, fixing his meals, bathing him and dressing him. After this surgery, on 24 October 1983, the deputy commissioner entered an order finding Honeycutt PTD as a result of his injury, which order was affirmed by this court on 7 June 1984. In March 1984, Honeycutt underwent stomach surgery to repair ulcers caused by the stress of his injury and by the numerous medications which he was required to take as a result of that injury. This surgery temporarily added bodily lifting to the wife's duties, so that Honeycutt would not tear his stitches. Dr. Massam last saw Honeycutt in November 1984, and it was his opinion that from 12 December 1980 until that time, Honeycutt had needed four hours of attendant care services per day.
In January 1985, Honeycutt came under the care of another orthopedic surgeon, Dr. Sonni, who diagnosed him as having suffered a spinal stenosis, i.e. a narrowing of the canal through which the spinal cord passes, as a result of the injury and the two subsequent surgeries. From January 1985 to November 1985, Dr. Sonni treated Honeycutt conservatively, with traction and muscle relaxants. It was Sonni's opinion that from January 1985 to 3 May 1985, Honeycutt required eight hours per day attendant care to assist him in properly maintaining the required traction, as well as in the activities of daily living, such as going to and from the bathroom, bathing, receiving his medication, dressing, getting in and out of his back brace, having food prepared, and receiving assistance with his TNS unit. In Sonni's opinion, from 3 May to 4 November 1985 Honeycutt had sufficiently improved so that the required care lessened to a period of two hours per day for the same functions. On 4 November 1985, Sonni performed a third operation on Honeycutt's back, again a spinal fusion, and it was his opinion that full-time attendant care (eight hours per day) was required until 10 February 1986, and that at least one hour per day thereafter was required on a permanent basis. In November 1986, Honeycutt underwent a second stomach surgery to repair a hernia which he had acquired by attempting to adjust his traction. In addition to her other duties, this surgery required the wife to engage in additional lifting, and in changing a wound dressing three times per day.
On 26 May 1987, a licensed practical nurse, Hunter, paid a home visit to observe Honeycutt and his wife and to see the services which he actually required. In her opinion, Honeycutt needed assistance in *986 taking his medication, in getting in and out of and being supervised in the whirlpool, in the application of and the changing of the pads and gel for his TNS unit, in receiving massage for his leg cramps, in dressing, in doing leg extensions after massage in an attempt to ease the muscle cramps, in administering his traction and in applying his back brace. It was her opinion that these required services would take from three to four hours per day, two hours in the morning and two hours in the afternoon. It was her testimony that an unlicensed worker from her nursing agency would perform such duties for $6.00 an hour. This latter figure was the only evidence presented as to the value of the wife's services.
The instant claim for attendant care benefits was filed on 7 May 1985, seeking such benefits from the date of the accident to the present and continuing. It was the E/C's position at the hearing on the claim that the services were not medically necessary, that no request had been made for the services, and that the claim from the date of the accident until December 1984 was barred because no claim had been made at two previous hearings. The DC received the live testimony of the wife as to the services she was required to perform, as well as the depositions of Drs. Massam and Sonni and Nurse Hunter. Based on this evidence, with regard to the E/C's argument that the claim was barred from the date of accident until December 1984, the DC agreed, finding that the issue of attendant care had been ripe at hearings in October 1983 and December 1984 but that no claim had been made at those times. With regard to the claim after December 1984, the DC found that the wife had performed services only to the extent of rubbing Honeycutt's legs, putting his TNS unit on, administering medication to his back, and making meals for him which she was also making for her family. He held that these services were no more than gratuitous household services which would normally be provided, and therefore denied the claim.
The D/C denied Honeycutt's claim from the date of the accident to December 1984 on the sole ground that the issue had not been raised at either of two prior hearings. In Sistrunk v. City of Dunedin, 513 So.2d 200 (Fla. 1st DCA 1987), the E/C cross-appealed the deputy's award of attendant care benefits alleging, as in this case, that the claim was barred because it had been ripe for adjudication at a previous hearing. In affirming on cross-appeal, this court held that an employer is under a continuing obligation, once it has knowledge of an employee's injury, to place needed benefits in the hands of the injured worker. An employer must offer or furnish benefits when the employer knows, or reasonably should know from facts properly and diligently investigated, that such benefits are due. Section 440.13(2)(b) requires the employer to provide nursing care benefits, even though not requested, if the nature of the injury requires such benefits. The E/C cannot in good faith assert that it was unaware of the claimant's need for attendant care in the face of the self-executing nature of the worker's compensation law, requiring that the E/C continuously monitor the claimant's progress and provide him with all needed benefits. Sistrunk at 202 (emphasis in original).
In this case, the E/C was not only aware of the type and severity of injury which claimant suffered, but it was stated by all of Honeycutt's treating physicians that the E/C was kept aware of all procedures performed on Honeycutt as well as his condition and progress from the time of the injury. Therefore, the E/C was under an obligation at least to offer attendant care benefits based on its knowledge of these facts, from which it appeared that such benefits were due.
The D/C denied the claim from January 1985 to the present and continuing finding that the evidence showed that the wife performed only gratuitous, household services on Honeycutt's behalf. The E/C argues that the D/C should be affirmed in that the no statute in effect at the time of Honeycutt's injury, Section 440.13(1), Florida Statutes (1979), should control. However, in Bonnie Heath Farms v. Ferrell, 458 So.2d 1147 (Fla. 1st DCA 1984), this *987 court affirmed a 1984 compensation order awarding attendant care services retroactively to 23 January 1976. In doing so, the court pointed out that the current statute, Section 440.13(2)(d) as amended in 1983 to codify earlier decisional rulings clearly contemplates compensation for family members who render nonprofessional custodial care. Ferrell at 1148. Accord Kraft Dairy Group v. Sorge, 509 So.2d 1156, 1157 (Fla. 1st DCA 1987); Sistrunk v. City of Dunedin, 513 So.2d 200 (Fla. 1st DCA 1987) (claimant injured in July 1980, but 1983 statute used to affirm award of attendant care benefits). Therefore, we find that this argument is without merit.
With regard to the merits of an attendant care award for the period from January 1985 to the present and continuing, the DC found that the evidence showed only that the wife provided services of rubbing claimant's legs, putting on his TNS unit, administering his medication and making meals which she was making already for her family. However, the evidence clearly shows that from January 1985 forward claimant has required help with placing himself in and out of traction, with reaching and taking his medication, with being placed in and out of and being watched in a whirlpool bath, in the application and maintenance of his TNS unit in performing range of motion leg extensions to relieve cramps, in taking on and putting off his back brace, and in the various activities of daily living such as bathroom functions, bathing, dressing, and receiving special meals because of his ulcer. Again, as held in Ferrell, supra, medical monitoring and assistance with basic personal activities required by a claimant's injury are not such services as are normally provided by family members gratuitously, and we find that the evidence in this case is more than substantial to show that the services performed by claimant's wife warrant an award of attendant care services in this case. The number of hours per day awarded should be made by the deputy with reference to the testimony of Dr. Sonni and Nurse Hunter. If any further evidence is needed as to the value of the wife's services, it may be taken.
REVERSED.
SHIVERS and WIGGINTON, JJ., concur.