895 So.2d 1263 (2005)
IMC PHOSPHATES CO., and Travelers Insurance Co., Appellants,
v.
Lonnie PRATER, Appellee.
No. 1D03-4954.
District Court of Appeal of Florida, First District.
March 10, 2005.
*1265 Curt L. Harbsmeier, Terry P. Roberts, and Jennifer Haley, of Harbsmeier, Dezayas, Appel & Harden, LLP, Lakeland, for Appellants.
Pat T. DiCesare, II, and Harold E. Barker, of DiCesare, Davidson & Barker, P.A., Lakeland, for Appellee.
COLLINS, JULIAN E., Associate Judge.
The employer/carrier (E/C) appeal a final order of the Judge of Compensation Claims (JCC) finding compensable, pursuant to section 440.092(5), Florida Statutes (2001), the injuries suffered by claimant Lonnie Prater (Appellee) on August 20, 2002; and granting the request for nonprofessional attendant care for the period from October 4, 2001, through November 1, 2001, for two hours a day at $11.75 an hour (for a total of $658.00) for injuries sustained in the original industrial accident on October 3, 2001. Concluding that competent, substantial evidence (CSE) supports the JCC's factual findings and that the law was correctly applied to those facts, we affirm the final order.

Attendant Care Services
The original accident occurred on October 3, 2001, as Appellee was driving on a gravel/dirt road on Employer's premises and an approaching vehicle swerved from its lane and ran head-on into Appellee. Undisputedly, that accident is compensable. A day after the accident, Appellee underwent an open reduction and internal fixation of the right tibial plateau fracture and intra-operative fluoroscopy at Lakeland Regional Medical Center. When he was discharged from the medical center on the same day, Appellee was in a straight-type long leg cast and had very limited mobility. According to the October 16, 2001, post-surgery status clinical report of Dr. Vo, the board-certified orthopedic surgeon who had performed the surgery upon Appellee's right knee/leg area, Appellee "should remain always non-weightbearing on the right lower extremity." *1266 The doctor prescribed a rental wheelchair for four weeks.
At the merits hearing, the JCC heard testimony that Appellee's wife and other family members had provided attendant care services from the date Appellee came home after surgery. E/C contend there is no objective information in the medical notes or in the hospital discharge papers to have put E/C on notice of Appellee's need for attendant care. We hold that the pertinent statutes, Florida case law, and CSE in the record support the award of attendant care benefits.
Several statutes come into play regarding attendant care. Section 440.13(1)(b), Fla. Stat. (2001), defines such care:
"Attendant care" means care rendered by trained professional attendants which is beyond the scope of household duties. Family members may provide nonprofessional attendant care, but may not be compensated under this chapter for care that falls within the scope of household duties and other services normally and gratuitously provided by family members. "Family member" means a spouse, father, mother, brother, sister, child, grandchild, father-in-law, mother-in-law, aunt, or uncle.
Section 440.13(2)(b), Florida Statutes (2001), states in pertinent part: "The employer shall provide appropriate professional or nonprofessional attendant care performed only at the direction and control of a physician when such care is medically necessary."
"Medically necessary" means any medical service or medical supply which is used to identify or treat an illness or injury, is appropriate to the patient's diagnosis and status of recovery, and is consistent with the location of service, the level of care provided, and applicable practice parameters. The service should be widely accepted among practicing health care providers, based on scientific criteria, and determined to be reasonably safe. The service must not be of an experimental, investigative, or research nature, except in those instances in which prior approval of [AHCA] has been obtained. [AHCA] shall adopt rules providing for such approval on a case-by-case basis when the service or supply is shown to have significant benefits to the recovery and well-being of the patient.
§ 440.13(1)(m), Fla. Stat. (2001).
CSE supports the JCC's finding that Appellee's wife and other family members provided "medically necessary" nonprofessional attendant care services beyond the scope of normal household duties during the period covered by the JCC's award of such care. See Socolow v. Flanigans Enter., 877 So.2d 742, 744 (Fla. 1st DCA 2004) (including, among "medically necessary" attendant care services, acts such as bathing, dressing, administering medication, and assisting with sanitary functions). E/C assert that the present record does not satisfy the statutory subsection (2)(b) requirement that the attendant care be "performed only at the direction and control of a physician when such care is medically necessary." We disagree.
Dr. Vo was asked on direct examination to assume that immediately after the discharge from the hospital, Appellant was unable to ambulate without assistance, and his family had to help him getting in and out of bed, going to and from the bathroom and bathing, and preparing and serving meals. The doctor testified (by telephone) that "[c]ertainly some degree of assistance would be necessary" for about two hours a day. Other questioning indicated Dr. Vo's confusion as to what the statutes mean by "attendant care" and "medically necessary," and whether his medical opinion differed from the legal *1267 definitions of these terms. After he was read statutory subsection (1)(m) (the legal definition of "medically necessary") and examples of compensable attendant care were set forth, Dr. Vo testified that assisting an individual post-surgery with sponge-bathing, ambulating, dressing, and toilet functions is beyond the scope of ordinary familial household duties and is medically necessary based on the nature of Appellee's injury and surgery. Although some inconsistencies or internal conflicts are apparent in Dr. Vo's medical opinions on this issue, the JCC exercised his authority to assess credibility, weigh the doctor's opinions, and resolve conflicting evidence as to whether post-surgery attendant care was reasonable and medically necessary. Because CSE supports the JCC's factual findings as to medical necessity, and the law was correctly interpreted, we shall not disturb the award of attendant care benefits on the first ground asserted by E/C. See Chavarria v. Selugal Clothing, Inc., 840 So.2d 1071 (Fla. 1st DCA 2003).
As to E/C's second ground for challenging this award  the alleged lack of CSE and findings to show that attendant care was performed "at the direction and control of a physician"  E/C note that Dr. Vo, the authorized treating physician, did not expressly prescribe attendant care. However, that fact "is not ... determinative of the claimant's right to recover such benefits." Rockette v. Space Gateway Support, 877 So.2d 852, 853 (Fla. 1st DCA 2004). Rather, "[i]t is sufficient that the physician provided the necessary testimony at the hearing." Id.; see also Attitudes & Trends v. Arsuaga, 616 So.2d 1103 (Fla. 1st DCA 1993) (construing similar language in 1990 version of § 440.13 so as not to preclude award of attendant care for services rendered before physician prescribes such care or states it is medically necessary, where required medical testimony was presented subsequently at hearing). The self-executing nature of Florida's workers' compensation law requires an e/c to monitor a claimant's injuries, procedures, and progress, and to provide needed benefits. See Bass v. IMC Fertilizer, 655 So.2d 1225 (Fla. 1st DCA 1995); Honeycutt v. R.G. Butlers Dairy, 525 So.2d 984 (Fla. 1st DCA 1988). We agree with the JCC's finding that the present record provides evidence that should have prompted a timely, diligent investigation by E/C regarding Appellee's need for attendant care services. See Bass, 655 So.2d at 1225 (reversing denial of attendant care benefits, where record provided evidence from which JCC could impute knowledge to the e/c based on nature and severity of claimant's injury, fact that claimant was sent home from hospital in cast brace from his hips to toes, and fact that claimant's doctor had prescribed wheelchair and walker).

Compensability of Second Accident
E/C's second issue relates to the JCC's finding Appellee's second accident compensable under section 440.092(5), Florida Statutes (2001). It is undisputed that Appellee had a scheduled 4:00 p.m. medical appointment on August 20, 2002, with Dr. Simon, an authorized treating orthopedic surgeon with whom Appellee had begun treatment in June 2002. Appellee testified that in mid-2002, Dr. Simon had advised that Appellee was capable of performing sedentary work. On receiving that news, Appellee became concerned because his knee was getting worse. Appellee said that Dr. Simon initially had indicated he would not approve any more x-rays because some had been taken already. Appellee's wife testified that her daughter had driven Appellee to his previous medical appointment. However, Appellee's wife became so concerned about the lack of *1268 improvement in her husband's right knee/leg that she arranged to drive him to Dr. Simon's office on the day in question. She believed that the doctor would not listen to Appellee, and she intended to insist that x-rays be taken.
The parties dispute some of the circumstances surrounding the trip to Dr. Simon's office in Brandon on August 20, 2002. Appellee's wife testified that on the night before the appointment, the air conditioner in her 1992 van, which was used to transport Appellee, "died." Not wanting to put any more money into an old vehicle, she decided to take the morning off from work and to purchase a new vehicle with a functioning air conditioner. She and Appellee left home, drove to a car dealership in Lakeland before lunch, and bought another vehicle. Appellee's wife testified that they left the car dealership around 1:45 p.m., intending to get on Interstate 4 and go to Dr. Simon's office (about 33-35 miles away) according to the directions furnished to them by the doctor's office. Less than a mile from the dealership and before they reached the interstate, they were rear-ended by a police car. In the crash, Appellee injured his mid-back, his neck, and his "good" knee/leg. He did not re-injure his right knee/leg, which had been injured in the 2001 industrial accident. Appellee's wife acknowledged that at the time of the collision, they were heading in the general direction of their residence near Polk City. However, she testified they had been going directly from the car dealership to the doctor's office when the accident occurred. She said they had left so early to get to Dr. Simon's office because she had never driven there before and wanted to allow plenty of travel time. Kevin Lovering, the car salesman who had sold the vehicle to Appellee and his wife on August 20, testified it had been his understanding that Appellee and his wife were leaving his car dealership to go directly to a medical appointment for Appellee. The JCC accepted the testimony of Appellee, his wife, Dr. Simon, and other witnesses that Appellee and his wife were in route to a scheduled appointment with the doctor for remedial treatment when the August 20 accident occurred.
Relying on those factual findings, the JCC concluded that the August 20 second accident is compensable pursuant to section 440.092(5). This statutory subsection states:
(5) SUBSEQUENT INTERVENING ACCIDENTS. Injuries caused by a subsequent intervening accident arising from an outside agency which are the direct and natural consequence of the original injury are not compensable unless suffered while traveling to or from a health care provider for the purpose of receiving remedial treatment for the compensable injury.
E/C argue there is no CSE to award compensability of the August 20 accident. First, E/C assert that the testimony of Appellee and his wife is so incredible that it does not constitute CSE. Second, E/C contend that Appellee and his wife were not "traveling to" the doctor's office but, instead, were substantially deviating from the most direct route to the doctor's office and were actually heading home from buying a new vehicle when the police car hit them. Third, E/C argue the second accident is not compensable because the appointment with Dr. Simon was not for "remedial treatment" in accordance with statutory subsection (5). Finally, E/C claim the August 20 accident is not compensable because Appellee's injuries suffered in that accident are not "the direct and natural consequence of the original injury" sustained in the October 3, 2001, compensable industrial accident.
*1269 Section 440.092(5) was enacted in 1990 and re-enacted in 1991. See Ch. 90-201, § 14, at 920, and 91-1, § 10, at 36, Laws of Fla. One commentator has characterized this legislation as:
an effort to eliminate compensation of subsequent accidents which do more than merely aggravate or accelerate the problems caused by the industrial accident unless such subsequent accident occurred while traveling to or from a health care provider.
Patrick John McGinley, Florida Workers' Compensation 487 (2003 ed.). E/C's argument against compensability of the second accident essentially claims that the facts in the record do not satisfy all the requirements of subsection (5). E/C concede that the August 20, 2002, collision was a "subsequent intervening accident arising from an outside agency," specifically, the Lakeland police officer who hit Appellee's vehicle.
We address first the issue of whether the testimony of Appellee and his wife (regarding their trip to the medical appointment) is so incredible as not to constitute CSE. The JCC was in a unique position to observe the witnesses, assess their demeanor and credibility, and weigh the evidence accordingly. Although other evidence might have supported a contrary finding regarding whether the couple were heading home or "traveling to" Dr. Simon's office when the second accident occurred, we conclude that CSE supports the story accepted by the JCC. See Fla. Mining & Materials v. Mobley, 649 So.2d 934 (Fla. 1st DCA 1995).
The second issue  whether Appellee and his wife were "traveling to" the doctor's office  relates to the first issue. It is undisputed that Appellee had a late afternoon appointment with Dr. Simon. At the car dealership, they told the salesman that they were planning to drive directly from there to the doctor's office. They left the dealership over two hours before the scheduled medical appointment. At the final hearing, E/C's counsel argued that the trip from Appellee's house to the car dealership to purchase a vehicle constituted a substantial deviation from the trip to the doctor's office, so that any accident occurring before Appellee and his wife got back to the route they would have traveled to Dr. Simon's office (but for the deviation) is not compensable. E/C rely on a line of cases holding that "an employee who is on a personal mission is outside the scope and course of employment." See, e.g., Rodriguez v. Tri-State Carriers, Inc., 792 So.2d 1253, 1254 (Fla. 1st DCA 2001).
It is the general rule in Florida that an employee who deviates from his employment to engage in a personal errand is not entitled to compensation for damages sustained in an accident occurring before he returns to the course he was pursuing in the interest of the employer.
Sunshine Jr. Food Stores, Inc. v. Thompson, 409 So.2d 190, 191 (Fla. 1st DCA 1982); N & L Auto Parts Co. v. Doman, 111 So.2d 270 (Fla. 1st DCA 1959). We can infer from the final order and the evidentiary record that the JCC found it sufficient, for purposes of the "traveling to" element of statutory subsection (5), that Appellee and his wife were in route to Dr. Simon's office when they were hit. However, E/C contend that a reasonable reading of Thompson indicates that the JCC should have expressly addressed and resolved the issues of 1) whether Appellee and his wife substantially deviated from "the course" they were pursuing relating to employment (the trip to the doctor relating to compensable injuries) and 2) whether they had returned to the direct route when the accident occurred.
The claimant in Thompson, 409 So.2d at 190, was a district manager for a company of food stores. His duties included occasional *1270 observation of the routine of store clerks in his ten-store district in West Florida. At 9:00 p.m. on the date of the accident, Thompson (accompanied by his minor children), drove a short distance from his home to inspect an Okaloosa County store in his district. After observing the store clerk from a parked car, Thompson became bored and drove west on Highway 98, beyond his district, to "kill time" until he could return to inspect the same store after its midnight closing. He headed toward Pensacola, turned off the highway, and crossed the toll bridge leading to Pensacola Beach in Escambia County. Thompson then turned east and drove along the beach road paralleling the Gulf of Mexico that eventually would take him back to Highway 98. This was approximately a 40-mile deviation. Before returning to the main highway, Thompson missed a turn and skidded into a road sign, causing the injuries at issue. See id. The deputy commissioner found the accident compensable because the predominant purpose of the trip involved business, and benefits were awarded. We reversed on the ground that Thompson had deviated from the course and scope of employment when he chose to take a 40-mile "joyride" to pass the time until his next assignment. See id. at 192.
Thompson is factually distinguishable. The instant case is not a "deviation from employment" case. Rather, the JCC found CSE demonstrating that Appellee and his wife were "traveling to" the doctor's office for treatment related to the original compensable industrial accident when the collision occurred on August 20, 2002. At least under the present facts, it does not matter that Appellee and his wife were traveling to Dr. Simon's office from a car dealership rather than from their home. We also find distinguishable the facts in Rodriguez, 792 So.2d at 1253 (finding that employee/claimant who borrowed company delivery truck on Day 1 for personal convenience and was in accident while driving truck on Day 2, before reaching usual route of travel between workplace and delivery site, was not entitled to benefits, for trip did not serve any business purpose and employee was not engaged in special mission or errand for employer at time of accident).
Next, we address E/C's argument that Appellee was not going to Dr. Simon for "remedial treatment" on August 20, 2002. As of that date, Appellee had not reached maximum medical improvement (MMI). See Pan American Hosp. v. Fleitas, 645 So.2d 1033, 1034 (Fla. 1st DCA 1994) ("Remedial treatment may not be awarded for the period following MMI."). The JCC accepted the testimony of Appellee and his wife that Appellee's compensable right knee/leg injury was not getting better and that the doctor was not listening to Appellee's concerns. Appellee's wife (rather than her daughter) elected to drive Appellee to Dr. Simon's office for the appointment on August 20 for the purpose of "pushing for" x-rays to determine why Appellee's condition was not improving. Section 440.092(5) does not define "remedial treatment." A "remedy" is "anything that cures ... or prevents disease," and "remedial" means "curative" or "acting as a remedy." Dorland's Illustrated Med. Dictionary 1446 (27th ed. 1988). An x-ray is a diagnostic tool ordinarily used to determine the location, nature, or cause of a disease or condition. See id. at 461. Given the circumstances in this record, taking x-rays was a reasonable means of determining why Appellee's compensable injuries were not improving and what remedial treatment to pursue. Thus, the JCC correctly found that Appellee was going to the doctor for remedial treatment.
Finally, we address the statutory element that the injuries caused by the *1271 subsequent intervening accident be "the direct and natural consequence of the original injury." This concept pre-dates the 1990 enactment of subsection (5). See, e.g., D'Angelo Plastering Co. v. Isaac, 393 So.2d 1066, 1068 (Fla.1980); Sosenko v. Am. Airmotive Corp., 156 So.2d 489 (Fla.1963). One commentator expressed the underlying principle as follows:
When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct. More specifically, the progressive worsening or complication of a work-connected injury remains compensable so long as the worsening is not shown to have been produced by an intervening nonindustrial cause.
Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law 10-1 (2004 ed.). The inquiry into whether the August 20, 2002, second accident is compensable does not end at section 440.092(5). "Various cases have established that injuries sustained in the pursuit of medical treatment may be compensable when the treatment relates to a compensable injury." D.O.T., State of Florida v. King, 554 So.2d 1192, 1193 (Fla. 1st DCA 1989) (finding injuries that employee/claimant sustained when struck by automobile, while walking, as prescribed therapy for her industrial injury, were compensable because injuries remained within chain of industrial causation). For example, in All Am. Wheel World, Inc. v. Gustafson, 499 So.2d 876 (Fla. 1st DCA 1986), claimant Gustafson was injured in a compensable September 1984 industrial accident. The authorized chiropractor scheduled 13 office appointments for physical therapy. In November 1984, as Gustafson was in route to the chiropractor's office for medical treatment, he was injured in an automobile accident. At the time of his second accident, Gustafson had not fully recovered from his original industrial injuries and had not reached MMI. We affirmed the deputy commissioner's finding the second accident compensable. Id. The workers' compensation chapter defines "injury," in pertinent part, as "personal injury ... by accident arising out of and in the course of employment, and such diseases or infection as naturally or unavoidably result from such injury." § 440.02(18), Fla. Stat. (2001). In affirming the compensability award in Gustafson, 499 So.2d at 876, we quoted the following passage from Cent. Concrete Co., Inc. v. Harris, 475 So.2d 1300, 1301 (Fla. 1st DCA 1985):
When a primary injury is shown to have arisen out of and in the course of employment, every natural consequence of that injury likewise arises out of the employment unless it is the result of an independent intervening cause which breaks the chain of causation.
Because Gustafson was traveling to the doctor's office for medical treatment when the intervening automobile accident occurred, we found no break in the chain of causation. See 499 So.2d at 877. Appellee relies on Gustafson for the proposition that because the JCC found Appellee was traveling to Dr. Simon's office for remedial treatment, the collision with the police car did not break the causal connection between the original compensable injuries and the August 20, 2002, injuries. The fact that Appellee's original, compensable right knee/leg injuries did not contribute to causing the second accident is not controlling on the question of a causal connection. See Telcon, Inc. v. Williams, 500 So.2d 266, 268 (Fla. 1st DCA 1986).
In Williams, claimant Williams suffered a herniated disc in a January 1981 industrial accident, which was accepted as compensable. He continued to receive medical care and therapy in the ensuing years *1272 and had not reached MMI in February 1983, when he suffered neck, head, and shoulder injuries when his car was rear-ended as Williams traveled to the doctor's office to receive medical treatment. Id. at 267. We concluded that although Williams' journey to the doctor's office occurred beyond the temporal and spatial limits of employment, it nevertheless was necessary and reasonable, and it would not have been undertaken if Williams had not suffered the original compensable injury. Id. at 269. We affirmed the deputy commissioner's finding Williams' second accident compensable. Id. at 271; accord Laines v. Workmen's Comp. Appeals Bd., 48 Cal.App.3d 872, 122 Cal.Rptr. 139 (Ct.App.1975) (finding injuries suffered in motorcycle accident compensable, where employee/claimant was traveling to medical appointment for treatment of prior compensable injury). The language and reasoning in King, Gustafson, and Williams, all of which preceded the enactment of statutory subsection (5), support Appellee's argument that subsection (5) merely codified existing case law addressing the compensability of subsequent intervening accidents involving claimants who were traveling to the doctor to get treatment for prior compensable injuries. The present record supports the JCC's conclusion that Appellee's injuries are compensable under section 440.092(5). Because Appellee was traveling to the doctor's office for remedial treatment of compensable injuries on August 20, 2002, when the accident occurred, Gustafson and Williams support the conclusion that Appellee's subsequent injuries "are the direct and natural consequence of the original injury."
AFFIRMED.
LEWIS and POLSTON, JJ., concur.