15705

FOUNTAIN v. HARTSVILLE OIL MILL *ET AL.*

(32 S. E. (2d), 11)

*Messrs. Thomas, Cain & Black,* of Columbia, S. C., and *John F. Wilmeth,* and *Robert W. Shand,* both of Hartsville, S. C., Counsel for Appellants,

*Messrs. Muzingo & Watts,* of Darlington, S. C., Counsel for Respondent,

January 23, 1945.

MR. CHIEF JUSTICE BAKER delivered the unanimous Opinion of the Court.

This case has given the Court more than the ordinary concern due in a large measure to our sympathy for the respondent. It comes to us with an affirmance by the learned special Circuit Judge of the award of the Industrial Commission, and involves issues as to the controlling law applicable to the factual situation.

On the afternoon of October 17, 1942, the respondent and his son were employed as laborers by the Superintendent of the respondent Oil Mill, the employment to commence on Monday morning, October 19, and they were instructed to report for work at the Oil Mill at seven o'clock, which they did. The employees of the Oil Mill are required to punch a time clock when they enter upon and leave their work. Neither the respondent nor his son could read or write and when they reported for work at the appointed time, the superintendent of the Oil Mill prepared a time card for each of them, instructed them how to register in and out, punched their cards for them and placed the cards in their proper places, and respondent and his son proceeded to the respective work assigned to them on the premises of the Oil Mill.

Soon thereafter, the superintendent of the Oil Mill, desiring some one to repair a fence at his home, instructed the respondent to go there and repair same, and in fact sent respondent there on a horse-drawn vehicle owned by the Mill and driven by another employee of the Mill. This mule, wagon and employee were used to do errands for the Oil Mill and whatever the employee was told to do by the superintendent. The respondent repaired the fence, and that after-

noon was instructed to cut some boards to be burned in the home of the superintendent of the Oil Mill. While cutting these boards into firewood or stovewood, on the premises of the said superintendent, a piece of board flew up and struck respondent in his eye, resulting in the loss of the sight of the eye.

The time card of respondent was removed from the files of the Oil Mill while he was working at the home of the superintendent, who personally paid respondent for that day's work. The injury to respondent's eye was treated by Dr. Byerly, the physican of the Oil Mill and also the physician of the superintendent of the Mill, and Dr. Byerly's bill therefor was paid by the superintendent personally.

Respondent did not at any time following the injury to his eye return to the Oil Mill for the purpose of working.

While there are other issues raised by the appellants, this case can and will be disposed of on the question whether the Court erred in holding that the injury by accident suffered by the respondent arose out of and in the course of his employment with the appellant, Hartsville Oil Mill.

We are aware of the line of cases holding that an employer in loaning an employee, without the knowledge, consent or acquiescence of the employee, is responsible for injury sustained by his or its employee while so loaned, but here we are dealing with our statute, and the decisions of our Court construing the phrase therein, "injury by accident arising out of and in the course of the employment," and are of course limited to the facts of this particular case.

In *Branch v. Pacific Mills,* 205 S. C., 353, 32 S. E. (2d), 1, we find the following:

"It has been well stated that 'the two parts of the phrase "arising out of and in the course of the employment" are not synonymous, and both must exist simultaneously be-

fore any Court will allow recovery under a compensation act so worded.' 'Arising out of' refers to the origin and cause of the injury, whereas 'in the course of' refers to the time, place, and circumstances of the occurrence. See *Ryan v. State Industrial Commission,* 128 Okl., 25, 261 P., 181; *Ridout v. Rose's 5-10-25¢ Stores,* 205 N. C., 423, 171 S. E. 642."

And in *Eargle v. S. C. Electric & Gas Company,* 32 S. E. (2d), 240, it is stated:

"As is generally held, the words 'arising out of,' refer to the origin of the cause of the accident, while the words 'in the course of employment,' have reference to the time, place and circumstances under which the accident occurs."

We think it is obvious from the facts hereinabove stated that the accident resulting in the injury to the respondent arose indirectly out of his employment by the appellant, Hartsville Oil Mill, but the crux of the case is, did the accident causally arise out of and in the course of this employment as defined in the cases just above cited?

In the North Carolina case of *Burnett v. Palmer-Lipe Paint Company,* reported in 4 S. E. (2d), 507, a case directly in point and much stronger for the claimant than the one under discussion, as will be observed from the quoted portion following, it was held that the injury to the claimant did not come within the provisions of the North Carolina Workmen's Act, which Act, insofar as the portion of our Workmen's Compensation Act now under consideration, is in the identical language.

"The record presents these material facts upon which appellant's liability depends: The plaintiff was employed by the operator of a paint store doing business at a definite location in Asheville, where more than five persons were there employed. The employer owned a private residence in an-

other part of the city which had no connection with the business carried on at the store, except that both were owned by her. The plaintiff, in addition to the services rendered at the store, was also, for the same wage, required by his employer, from time to time, to perform certain other services at her home, such as firing the furnace, washing the floors, working the garden and mowing the lawn. No other person was employed in that work. It was while engaged in mowing the lawn that the injury complained of was received. Upon the record presented we are of opinion, and so hold, that the injury does not come within the provisions of the Act, that the Industrial Commission was without power to make the award against appellant, the insurance carrier, and that the Superior Court was in error in affirming the award. It is clear, we think, if the employer had been a corporation or partnership, of which Mrs. Lipe was an executive, an injury to an employee of the company while engaged in private and personal work for her, having no relation in character or location to the business of the company, would not have been compensable by the company or its insurance carrier under the Act. And we think the same reasoning would apply when the same person operates a business or industry, and also has personal service rendered in and around a private residence at another location."

In *Patterson v. Courtenay Mfg Co., et al.,* 196 S. C., 515, 14 S. E. (2d), 16, the issue was whether the claimants were casual employees *and were engaged in the course of business of the employer.* In the *Patterson case,* Mr. Chief Justice Bonham in writing the opinion of the Court, quoted with approval practically the entire portion of the opinion in *Burnett v. Palmer-Lipe Paint Co., supra,* which we have set out hereinabove, and prefaced his discussion of the facts of and the quotation from the *Burnett case,* by the following language from the opinion in *Ward v. Ocean Forest Club,* 188 S. C., 233, 198 S. E., 388: "Of course, in this case, as

in all other cases, the facts make the law, and while this Court is not bound in anywise by the decisions of the Courts of other States, such decisions are necessarily influencing if logical and in accordance with the apparent intent of the Legislature in the use of a word."

It appears to us that it would be farfetched to hold that while the respondent when injured was engaged in work at the private residence of the superintendent of the appellant Oil Mill, from which employment the Mill received no benefit whatsoever and had no interest, yet that his injury causally arose out of and in the course of his employment by and with the Oil Mill. This conclusion is reached notwithstanding that Workmen's compensation laws should be given a liberal construction, and if possible, so as to avoid harsh results, but having also in mind that "the Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment, and to cast upon *the industry in which they are employed* a share of the burden resulting from industrial accidents."

If it is the intent of the legislature to include within the terms of the Workmen's Compensation Act employees injured while engaged in activities not in the course of their employment, though arising indirectly by reason of their employment, then the Act will have to be accordingly amended.

Reversed and remanded with instructions to enter judgment in favor of appellants.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES, TAYLOR and OXNER concur.