68 So.2d 548

**WILSON & CO., Inc.   v.   CURRY.**

**4 Div. 726.**

Supreme Court of Alabama.

Nov. 12, 1953.

T. E. Buntin, Dothan, and Fred S. Ball, Jr., Montgomery, for appellant.

686

Alto V. Lee, III, Dothan, and Chas. O. Stokes, Ozark, for appellee.

LAWSON, Justice.

We granted certiorari to review the judgment of the lower court awarding compensation under the Workmen's Compensation Law.

The employer, Wilson and Company, Inc., is a corporation engaged in the meat packing business. On and prior to May 18, 1951, it operated a plant at Dothan, Alabama. Charles A. Dunseth was general manager of the Dothan plant. J. A. Boyd was master mechanic and "boss" of the mechanical department of the plant. Harold Curry was foreman of the mechanics who worked in the mechanical department. Boyd was subject to the direction and supervision of Dunseth and Curry was subject to the direction and supervision of Boyd and Dunseth.

Several weeks prior to May 18, 1951, the general manager, Charles A. Dunseth, asked Boyd to make a barbecue pit for Dunseth's personal use. Boyd agreed to have such a pit constructed at the plant out of discarded metal.

On or about May 17, 1951, Boyd made a sketch or drawing, which he showed to Mr. Dunseth in the latter's office. From Dunseth's office Boyd carried the sketch or drawing to Curry. Boyd and Curry discussed the making of the pit and out of this discussion came an understanding that on the following morning when Curry came to work he would bring from his home a piece of metal to be used as a grill.

Although Boyd and Curry were subject to call at any time, their working day usually began at 7:00 a. m. However, both men were accustomed to reach the plant not later than 6:45 a. m.

On the morning of May 18, 1951, Curry arrived at his place of work a little before seven o'clock. He was met by Boyd, who inquired whether he had brought the metal. Upon being advised by Curry that he had not done so, Boyd told Curry to take Boyd's car and go to Curry's home and get the metal. Curry drove to his home about six miles away and got the metal, which he placed in Boyd's car, and began his return trip to the plant. On his way back to the plant Curry was seriously injured in an automobile accident which occurred about 7:30 a. m.

Wilson and Company contends that the employee, Curry, did not sustain injury by accident arising out of and in the course of his employment.

It is argued here by the employer, Wilson and Company, that the act of Harold Curry in driving the car at the time of the accident was a voluntary act. There was some testimony before the trial court to that effect. But the trial court found to the contrary and held that the act of Curry in going after the metal was in response to an order from his immediate superior, Boyd. This finding has support in the evidence and we are not concerned here with the weight of the evidence. Black v. Alabama Dry Dock & Shipbuilding Co., 249 Ala. 209, 30 So.2d 456, and cases cited.

In Hamilton Motor Co. v. Cooner, 254 Ala. 422, 47 So.2d 270, 271, we held the death of an employee compensable as "arising out of and in course of employment" where the deceased, a mechanic and general handyman, was killed in an automobile accident during working hours while on the way to notify the wife of another employee that the latter would be com-

.pelled to work overtime. The employer impliedly authorized the employee to make the trip, which was in the employer's interest and reasonably related to its business in that it was to enable the employer to complete an emergency job after the usual working hours by keeping an employee on the job to do special work.

But the Hamilton Motor Co. case, supra, is distinguishable from the case of instant concern on the facts. In this case the plaintiff, although carrying out the orders of his superior, was not performing at the time of the accident a task for the benefit of his employer, Wilson and Company, but was performing a service for the private benefit of one of his superiors, Mr. Dunseth, the general manager of the plant at which he was employed.

No decision of this court has come to our attention wherein this factual situation has been presented.

The question has arisen in a number of other jurisdictions. We have examined many cases, but deem it unnecessary to discuss them here as it is an impossible task to reconcile the various holdings. For a general discussion, see Annotation, 172 A.L.R. 378. In the final analysis, no general rule is laid down in the cases which we have considered.

However, the trend of the recent cases seems to be to uphold awards made in cases of this kind.

In Schneider's Workmen's Compensation Text, Vol. 7, p. 244, § 1660(a), it is said:

"An employee who, as a voluntary accommodation to his employer or to another, performs services outside the scope of his employment, is not within the act while performing such services. * * * But an employer may enlarge or extend the scope of the employment and an employee who, at the direction of his employer or of his superior to whose orders he is subject, performs services outside the duties of his usual employment, and performs them in consequence of the existence of the relation of employer and employee, and as incidental to the employment, is within the protection of the act while performing such services. * * * Where an employee performs services for a third party by direction of his employer, if the relation of employer and employee continues to exist between them during the period of such services, the employer is liable under the compensation act for injuries sustained by the employee while performing the task so assigned to him although he may be under the control of the third party as to the details of the work."

To the same effect is Larson's Workmen's Compensation Law, where in Vol. 1, § 27.40, p. 421 et seq., it is stated:

"When any person in authority directs an employee to run some private errand or do some work outside his normal duties for the private benefit of the employer or superior, an injury in the course of that work is compensable.

*       *       *       *       *       *

"The technical reason for these holdings is simply that, whatever the normal course of employment may be, the employer or his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?

"The practical reason for the rule is that any other view places the employee in an intolerable dilemma; if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.

"Tested by these simple arguments, the cases denying compensation seem wrong. * * *"

We think that under the circumstances of this case the accident arose out of and in the course of the employment and that the award was properly made. The following cases from other jurisdictions support this holding. National Surety Corp. v. Kemp, Miss.1953, 64 So.2d 723;

Moody v. Baxley, 158 Fla. 357, 28 So.2d 325; Metzger v. Industrial Commission, 205 Wis. 339, 235 N.W. 802; Nugent Sand Co. v. Hargesheimer, 254 Ky. 358, 71 S.W. 2d 647; McDonald v. Grand Battery & Ignition Service, 254 N.Y. 605, 173 N.E. 886; Utica Mutual Ins. Co. v. Winters, 77 Ga.App. 550, 48 S.E.2d 918.

The trial court in fixing the amount of compensation to be paid Curry inadvertently applied the provisions of Act No. 563, approved August 29, 1951, General Acts 1951, p. 978, which act did not become effective until sixty days after its approval. Curry was injured on May 18, 1951, and the amount of compensation should have been computed in accordance with the law in existence on that date.

This error in computing the award should not, in our opinion, work a reversal of the cause. A judgment will be rendered here based on the law as it existed at the time of the accident.

The judgment of the trial court as so modified is affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.