479 S.E.2d 831

Joseph Glenn HICKS, Sr., Deceased Employee; and Shirley Hicks and Joseph Glenn Hicks, Jr., Minors, By and Through their Guardian ad litem, Claimants, Respondents,

v.

PIEDMONT COLD STORAGE, INC., Employer, and Atlantic Mutual Insurance Company, Carrier, Appellants.

No. 2596.

Court of Appeals of South Carolina.

Heard Sept. 10, 1996.

Decided Nov. 25, 1996.

Rehearing Denied Jan. 23, 1997.

David Hill Keller, of Haynsworth, Marion, McKay & Guerard, Greenville, for appellants.

Robert P. Foster, of Foster & Foster, Greenville, for respondents.

HEARN, Judge:

The children of Joseph Hicks, Sr. brought this workers' compensation action against Piedmont Cold Storage, Inc. following their father's death. The single commissioner, affirmed by the full commission, found Hicks' death was not compensable. The circuit court reversed, holding the commission's decision was against the substantial weight of the evidence and ordering Piedmont to pay death and funeral benefits to Hicks' family. We affirm.

### Facts

Piedmont employed Hicks as a full-time handyman, or "general helper," at its Easley plant. His duties included cleaning, sweeping, painting, greasing equipment, "other odds and ends," and assisting "wherever [Piedmont] needed him." Hicks' direct supervisor, David Lewis, who managed the plant, asked Hicks to help him repair his car.[1] Lewis offered personally to pay Hicks his regular $5.00 hourly wage for the work. Hicks agreed.

On Saturday, October 27, 1990, Hicks reported to Piedmont. He and Lewis began repairing the car's axle boot, which was leaking grease. They used company-owned tools and supported the car with a company-owned forklift while making repairs. When the car fell from the forklift, it crushed Hicks, tragically killing him. Piedmont did not reprimand or discipline Lewis as a result of this incident.

The only factual dispute is whether Hicks worked regularly for Piedmont on Saturdays. Hicks had not "punched in" on Saturday, October 27. Time cards examined by Lewis revealed Hicks had worked only one previous Saturday; however, at his deposition, Lewis testified Hicks had worked Saturdays on three or four prior occasions. Hicks' former wife testified Hicks often worked on Saturdays. She would pick him up at Piedmont on those Saturdays for him to exercise visitation rights with their children.

The single commissioner, affirmed by the full commission, found Hicks did not (1) work regularly on Saturdays; (2) clock in on October 27; or (3) benefit Piedmont in any way on the day of the accident. The commissioner also found Hicks worked for the personal benefit of Lewis. Therefore, the commission reasoned, Hicks' death did not result from an injury by an accident arising out of and in the course of his employment with Piedmont.

The circuit judge, however, held the tasks performed by Hicks at the time of his death were incidental to his employment. In addition, the judge found Hicks' work arose out of and in the course of his employment. He also found the

---

1. The car was titled in Lewis' name, although it was purportedly driven by Lewis' wife.

accident occurred (1) on Piedmont premises; (2) with Piedmont tools; and (3) while he performed a task under the direction and supervision of his superior. The judge noted Hicks had previously greased machinery in the course of his work. Hicks conferred a benefit on Piedmont in that Lewis was able to spend more of his time running the plant in lieu of dropping off and picking up his car from the repair shop. If Hicks had not performed the job as requested, reasoned the judge, he might have risked losing his employment. He further held Lewis enlarged the scope of Hicks' employment duties, which Piedmont ratified when it failed to reprimand or discipline Lewis for using company resources to perform private tasks. The judge remanded the case to the commission for calculation of the amount of death benefits payable to Hicks' minor children.[2]

## *Discussion*

Piedmont argues the circuit court erred in finding the substantial evidence did not support the decision of the workers' compensation commission. Piedmont further argues the circuit court substituted its judgment for that of the commission in finding Hicks' accident arose out of and in the course of his employment with Piedmont. We disagree.

■■■■ The findings of an administrative agency are presumed correct and will be set aside only if unsupported by substantial evidence. *Rodney v. Michelin Tire Corp.*, 320 S.C. 515, 518, 466 S.E.2d 357, 359 (1996). A court may not substitute its judgment for that of an agency as to the weight of the evidence on questions of fact unless the agency's findings are clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record. *Id.* (citing *Grayson v. Carter Rhoad Furniture*, 317 S.C. 306, 307, 454

---

2. Under *Montjoy v. Asten–Hill Dryer Fabrics*, 316 S.C. 52, 446 S.E.2d 618 (1994), an order of the circuit court remanding a case for additional proceedings before an administrative agency is not directly appealable. In this case, additional proceedings are not required because the parties agree on Hicks' average weekly wage. Judge Pyle's order remanded the case merely for a mathematical calculation of death benefits, rather than for any judgment on the merits. Any further proceedings on remand are purely ministerial and do not require the exercise of independent judgment or discretion on the part· of the commission.

S.E.2d 320, 321 (1995)). When the facts are not in dispute, the question of whether the accident is compensable is a question of law. *Bright v. Orr-Lyons Mill,* 285 S.C. 58, 59, 328 S.E.2d 68, 69 (1985). Such an inquiry is not an invasion of the fact-finding field of the commission. *Sylvan v. Sylvan Bros.,* 225 S.C. 429, 433, 82 S.E.2d 794, 795 (1954). Here, the parties agree to all the facts, except whether Hicks worked regularly on Saturdays. This fact alone, however, is not determinative. Even if Hicks worked only one Saturday, our conclusion remains the same in light of all the evidence.

The South Carolina Workers' Compensation Act requires that in order to be compensable, an injury by accident must be one "arising out of and in the course of employment." S.C.Code Ann. § 42-1-160 (1985). The two parts of the phrase "arising out of and in the course of employment" are not synonymous. Both parts must exist simultaneously before any court will allow recovery. "Arising out of" refers to the injury's origin and cause, whereas "in the course of" refers to the injury's time, place, and circumstances. *Howell v. Pacific Columbia Mills,* 291 S.C. 469, 472, 354 S.E.2d 384, 385 (1987).

For an injury to "arise out of" employment, the injury must be proximately caused by the employment. *Douglas v. Spartan Mills, Startex Div.,* 245 S.C. 265, 269, 140 S.E.2d 173, 175 (1965). The injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Id.* The causative danger must be peculiar to the work and not "common to the neighborhood." *Id.*

Death arises "in the course of employment" when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties and while fulfilling those duties or engaged in something incidental thereto. *Beam v. State Workmen's Compensation Fund,* 261 S.C. 327, 331, 200 S.E.2d 83, 85 (1973) (holding compensable teacher's death while traveling to a meeting of the S.C. Educational Association). The employee need not be in the actual performance of the duties for which he was employed in order for his injury or death to be in the course of employment and thus compensable. *Id.* at 332, 200 S.E.2d at 86. If the employee is doing work at the direction and for the

benefit of the employer, the time and place of work are for the benefit of the employer and a part of the employment. *Brown v. Jim Brown's Serv. Station,* 45 N.C.App. 255, 262 S.E.2d 700, 702 (1980).

 In the present case, Hicks performed services for Piedmont's plant manager, Lewis, at Lewis' request. Lewis was the highest-ranking employee at the plant. As a handyman or "general helper," repair work was within the scope of Hicks' duties. In addition, Lewis not only supervised Hicks while Hicks repaired Lewis' car, but also assisted him. Moreover, Piedmont profited from Hicks' work in that Piedmont had the benefit of Lewis' time during the workweek, which Lewis could have spent arranging repairs for his car. Furthermore, Lewis' request placed Hicks in an intolerable "Catch 22" situation: If Hicks complied with the request, he arguably risked forfeiting workers' compensation protection; if he did not comply, he might have risked losing his job. In light of these factors and the standard set forth in *Howell,* Hicks' death not only arose out of his employment at Piedmont, but also in the course of it.

Our view is supported by the reasoning found in Arthur Larson's treatise on workers' compensation,[3] which is frequently cited by appellate courts of this state. *See, e.g., Freeman Mechanical, Inc. v. J.W. Bateson Co., Inc.,* 316 S.C. 95, 447 S.E.2d 197, 199 (1994); *Peay v. U.S. Silica Co.,* 313 S.C. 91, 93–94, 437 S.E.2d 64, 65–66 (1993). Larson states:

When any person in authority directs an employee to run some private errand or do some work outside his normal

---

**3.** The large majority of cases favor compensability on similar facts and demonstrate the wide parameters within which the rule favoring compensability operates. *See, e.g., Wilson & Co. v. Curry,* 259 Ala. 685, 68 So.2d 548 (1953) (awarding compensation to employee for injuries sustained while building barbecue pit for superior's personal use); *Edwards v. State,* 173 Ga.App. 87, 325 S.E.2d 437 (1984), *cert. denied,* order dated Jan. 24, 1985 (finding compensable secretary's injuries sustained while picking up manager's lunch at nearby restaurant); *Pollock v. Reeves Bros., Inc.,* 313 N.C. 287, 328 S.E.2d 282 (1985) (granting compensation to employees injured while flying in another employee's airplane maintained by employer); *Brown v. Jim Brown's Serv. Station,* 45 N.C.App. 255, 262 S.E.2d 700 (1980) (holding death arose out of and in course of employment where employee-son was electrocuted while installing radio antennae at employer-mother's home).

duties for the private benefit of the employer or supervisor, an injury in the course of that work is compensable.

* * * * * *

The technical reason for [this rule] is that, whatever the normal course of employment may be, the employer and his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area.

* * * * * *

The practical reason for the rule is that any other view placed the employee in an intolerable dilemma; if he complies with the order, he forfeits compensation protection; if he does not comply, he gets fired.

1A Arthur Larson, *Workmen's Compensation Law* §§ 27.41, 27.44 (1996).

A similar case was decided by the North Carolina Court of Appeals. *Stewart v. North Carolina Dep't of Corrections,* 29 N.C.App. 735, 225 S.E.2d 336 (1976). In *Stewart,* one of the appellant's superiors asked him if he would come the following day during his off-hours to build a picnic shelter. Although the task was not one of his regular work duties, the appellant agreed to help because his supervisor asked him. After work began, the appellant was injured. The court found the injury compensable, stating:

[W]hen a superior directs a subordinate employee to go on an errand or to perform some duty beyond his normal duties, the scope of the Workmen's Compensation Act expands to encompass injuries sustained in the course of such labor. Were the rule otherwise, employees would be compelled to determine in each instance and, no doubt at their peril, whether a requested activity was beyond the ambit of the act. *See* 1 A. Larson, Law of Workmen's Compensation § 27.40 (1972).

The order or request need not be couched in the imperative. It is sufficient for compensation purposes that the suggestion, request or even the employee's mere perception of what is expected of him under his job classification, serves to motivate undertaking an injury producing activity. So long as ordered to perform by a superior, acts beneficial to

the employer which result in injury to performing employees are within the ambit of the act.

*Id.* 225 S.E.2d at 338. *See also Pollock v. Reeves Bros., Inc.,* 313 N.C. 287, 328 S.E.2d 282, 287 (1985) (holding compensable injuries sustained when a superior directs a subordinate to go on an errand or perform some duty beyond his normal duties). Because our legislature fashioned South Carolina's workers' compensation act after North Carolina's, similar cases from that state are "entitled to great respect." *Nolan v. Daley,* 222 S.C. 407, 412, 73 S.E.2d 449, 451 (1952) (quoting *McDowell v. Stilley Plywood Co.,* 210 S.C. 173, 181, 41 S.E.2d 872, 876 (1947)).

Piedmont argues *Fountain v. Hartsville Oil Mill,* 207 S.C. 119, 32 S.E.2d 11 (1945), is controlling. The court in *Fountain* held an employee's injury was not compensable because his injury, though arising out of his employment, did not occur in the course of his employment. *Id.* at 125, 32 S.E.2d at 13. In *Fountain,* the claimant reported to work, "punched in," and proceeded to his work assignment. Later that day, the claimant's supervisor instructed him to go to the supervisor's home to repair a fence. While working there, a piece of board struck the employee, blinding him in one eye. *Id.* at 122, 32 S.E.2d at 12.

We find the present case distinguishable from *Fountain.* In *Fountain,* the claimant worked at the supervisor's private residence. Hicks, however, was actually at his job site. He also performed a task with company tools under the direction of the plant's highest-ranking manager. Hicks sustained his injuries, therefore, in the course of employment. Furthermore, Hicks' work benefited Piedmont by allowing Lewis to remain at the plant instead of leaving work to deliver and pick up his car from a repair shop. The claimant in *Fountain* conferred no benefit upon his employer. Moreover, the *Fountain* court emphasized that "workmen's compensation laws should be given a liberal construction . . . to avoid harsh results, but having also in mind that 'the Workmen's Compensation Act was adopted to protect industrial workers against the hazards of their employment. . . .'" *Id.* at 125, 32 S.E.2d at 13.

Under these facts, the risk of loss should not be borne by an employee, such as Hicks, who was placed in an inferior bargaining position by a superior. Piedmont could have insured against this risk by adopting a policy prohibiting Lewis' conduct and informing employees of that policy. Piedmont could also have chosen not to ratify Lewis' behavior by reprimanding or punishing him after the accident. Finally, when accidents at the workplace arise out of and in the course of employment, our supreme court has expressly noted that industry, not employees, should bear the cost of loss. *Id.* (noting "the Workmen's Compensation Act was adopted ... to cast upon the industry in which [workers] are employed a share of the burden resulting from industrial accidents"). Given the general nature of Hicks' employment, the circumstances and location of the accident, the dilemma in which Hicks' superior placed him, and Piedmont's ratification of Lewis' act, our decision is consistent with that philosophy.

Accordingly, the decision of the circuit court is

AFFIRMED.

HOWELL, C.J., concurs.

STILWELL, J., dissents in a separate opinion.

STILWELL, Judge (dissenting):

I respectfully dissent. I believe this case is controlled by the concept embodied in *Fountain v. Hartsville Oil Mill,* 207 S.C. 119, 32 S.E.2d 11 (1945), where compensation was denied because the employee's activity provided no benefit to the employer. Here, the commission specifically found the work "was for the personal benefit of Mr. Lewis and in no way benefitted Piedmont Cold Storage Co., Inc." I believe that was a factual finding supported by substantial evidence in the record. It is well established that a decision of the workers' compensation commission must be affirmed if substantial evidence supports the commission's factual findings. *Rogers v. Kunja Knitting Mills, Inc.,* 312 S.C. 377, 440 S.E.2d 401 (Ct.App.1994).

In fact, the accident in this case was even more clearly not in the course of employment than the one in *Fountain.* In *Fountain* the claimant was at work, on company time, when

he was directed to do the work in question. Here, Hicks never even "punched in" as it was his day off. The only reason he even came to the plant was to do personal work for Lewis for which Lewis personally compensated him.

I agree with the majority that a superior expands a subordinate's scope of duties when he "directs [him] to run [a] private errand or do some work outside his normal duties for the private benefit of the employer or superior." ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION, § 27.41 (1996). That is not what happened here, however, because Lewis never "directed" Hicks to do anything. Rather, the record reflects that Hicks's work on that fateful Saturday was the result of a side agreement made outside the scope of the working relationship. Larson's explanation for the rule on expanding subordinate's duties demonstrates it is not applicable to work resulting from side agreements freely entered into by the employee for additional, personal compensation:

> The technical reason for [the rule expanding a subordinate's scope of duties] is that, whatever the normal course of employment may be, the employer and his supervisory staff have it within their power to enlarge that course by assigning tasks outside the usual area. If they do not assign these tasks on the strength of the employer-employee relation on which compensability depends, then what is the source of authority by which the task is assigned?

*Id.* at § 27.44. Where there is substantial evidence of a side agreement freely entered into between the employee and a supervisor, as in this case, the obvious "authority" for the task assigned is the separate agreement, not the supervisor's superior position in the workplace.

The majority opinion notwithstanding, there is simply no evidence in the record that Hicks "might have risked losing his job" had he declined to accept the extra work and compensation offered him. In fact, the only evidence in the record concerning Hicks's relationship with Lewis was that the two were friends. That Lewis paid Hicks out of his own pocket is further evidence he was not using his working relationship with Hicks to coerce him into working for him.

For the foregoing reasons, I would reverse the circuit court and reinstate the commission's decision.