622 S.E.2d 569

**Kenneth SHULER, Husband, Jason Brandon Shuler, Minor Child and William Bryant Shuler, Minor Child, Beneficiaries of Linda Shuler, Deceased Employee, Respondents,**

**v.**

**GREGORY ELECTRIC, Employer and Comptrust AGC of South Carolina, Appellants.**

No. 4039.

Court of Appeals of South Carolina.

Heard Sept. 13, 2005.

Decided Nov. 7, 2005.

Rehearing Denied Dec. 15, 2005.

---

436

Richard C. Detwiler and Mikell H. Wyman, both of Columbia, for Appellants.

E. Courtney Gruber and R. Walter Hundley, both of Charleston, and W. Scott Palmer, of Santee, for Respondents.

HEARN, C.J.:

Gregory Electric appeals from an order of the circuit court affirming the single commissioner and full commission's award of workers' compensation benefits to the survivors of Linda Shuler, who died on her return home from a doctor's office where she received treatment for a previous compensable injury. We affirm.

## FACTS

Shuler worked as an electrician's helper for Gregory Electric (Employer). In August of 2001, Shuler injured her right hand while holding a ladder for a co-worker. It is undisputed that Shuler's hand injury was work-related, and as a result of the injury, Shuler received treatment from an employer-authorized physical therapist and doctor in Columbia, South Carolina. On November 15, 2001, Shuler left her home in Orangeburg, South Carolina at approximately 2:20 p.m. to receive physical therapy on her hand. Although she did not have an appointment, she was able to see the physical therapist and doctor that afternoon, and left the doctor's office at 6:30 p.m.

While exiting off of I–77 South onto I–26 East, Shuler drove into the guardrail on the right side of the exit ramp, overcorrected, and crashed headfirst into the guardrail on the left side of the exit ramp. Some time after the accident occurred, Albert Chatfield, III, was driving on the exit ramp and had to swerve into the right lane in order to avoid Shuler's car, the trunk of which was protruding into the road. Chatfield testified that he was "not very sure" of what time it was when he discovered Shuler's car, but guessed it was somewhere between 7:30 and 8:00 p.m. Because Shuler's windows were very tinted and her doors were locked, Chatfield did not realize anyone was in the vehicle, but he called 911 because Shuler's vehicle posed a hazard for other motorists.

Trooper Brian E. Kyzer from the South Carolina Highway Patrol responded to Chatfield's call and arrived at the scene at 8:27 p.m. When Trooper Kyzer arrived, he shined a flashlight into Shuler's car and saw that she was inside, slumped toward the passenger's seat. He called an ambulance, but Shuler's injuries were fatal.

The parties dispute Shuler's activities between the time she left the doctor's office and the time Shuler's car was found. Trooper Kyzer testified that he found bags from a grocery store and a dollar store in Shuler's backseat and that Shuler's daughter had told him Shuler planned to go shopping after her visit to the doctor.[1] Based on his investigation, Trooper

---

1. Shuler's daughter testified that she never told Trooper Kyzer her mother planned to go shopping before returning to Orangeburg.

Kyzer surmised that the accident occurred at 8:15 p.m., give or take a few minutes.

The single commissioner awarded benefits to Shuler's husband and her dependent children, finding the accident arose out of and in the course of her employment. In making this finding, the commissioner noted that Shuler was bound by the terms of the Workers' Compensation Act at the time of the accident and that she could have lost her right to weekly benefits if she failed to receive the authorized medical treatment as directed. The single commissioner further found that Shuler's car could have been on the side of the road for some time before it was discovered, that Trooper Kyzer's estimated time of the accident was not based on any personal knowledge, and that the exact time of Shuler's accident could never be definitively established. The commissioner took judicial notice of "the fact that 6:30—7:30 p.m. is considered by many to be the 'supper hour,'" and found that even if Shuler stopped at a grocery store after her visit to the doctor's office, "such a stop would be insubstantial and would be covered under the allowed 'personal comfort' deviation." Finally, the commissioner found that Shuler was being paid mileage by Employer for this trip to her physical therapist and doctor.

Employer appealed to the full commission, which adopted the single commissioner's order verbatim. Employer then appealed to the circuit court, which also affirmed the award of benefits. The circuit court found that because Employer reimbursed Shuler for mileage while traveling to the doctor's office, her accident fell within an exception to the general rule that an employee is not covered by workers' compensation while traveling to and from work. The circuit court also found Shuler was performing a special errand by visiting her physical therapist and doctor, which qualified her trip for another recognized exception to the going and coming rule. While the circuit court disagreed that Shuler's trip to the store fell within the personal comfort doctrine, it found she was entitled to benefits because at the time of the accident she had resumed her business route. This appeal followed.

## STANDARD OF REVIEW

Generally, it is a question of fact whether an injury arose out of and was in the scope of employment. *Sharpe v.*

*Case Produce, Inc.,* 336 S.C. 154, 159, 519 S.E.2d 102, 105
(1999) (citation omitted).  Because causation is a question of
fact, the full commission's decision on the issue must be
affirmed if it is supported by substantial evidence in the
record.  *Id.* at 160, 519 S.E.2d at 105.  However, we may
reverse or modify the commission's decision if it is clearly
erroneous in view of the reliable, probative, and substantial
evidence on the whole record.  *Hargrove v. Titan Textile Co.,*
360 S.C. 276, 288–89, 599 S.E.2d 604, 610–11 (Ct.App.2004).
Substantial evidence is that which, in viewing the record as a
whole, would allow reasonable minds to reach the conclusion
the full commission reached.  *Gray v. Club Group, Ltd.,* 339
S.C. 173, 183, 528 S.E.2d 435, 440 (Ct.App.2000) (citation
omitted).

## LAW/ANALYSIS

### I.  Arising Out of and in the Scope of Employment

Employer first argues Shuler's accident, which occurred on
her way home from an unscheduled, unannounced doctor's
appointment, neither arose out of nor was in the scope of her
employment as an electrician's helper.  In support of its
argument, Employer cites to *Douglas v. Spartan Mills, Star-
tex Div.,* 245 S.C. 265, 140 S.E.2d 173 (1965).

In *Douglas,* the claimant sustained a compensable injury
while working as a doffer at a mill and received temporary
disability benefits.  He returned to work, but filed a claim
seeking additional benefits for permanent partial disability
and disfigurement.  *Id.* at 266–267, 140 S.E.2d at 173–174.  A
hearing was set for the morning of September 20, 1965, but
claimant misread the notice and reported for work that morn-
ing.  *Id.* at 267, 140 S.E.2d at 174.  Claimant's attorney called
the mill, and claimant's supervisor notified him of his hearing
and allowed him to leave.  Claimant went home, changed
clothes, and was on his way to the hearing when his steering
gear failed, and he ran into a bridge abutment.  Claimant
sought workers' compensation benefits for the injuries he
sustained in the accident, and the single commissioner, full
commission, and circuit court all agreed that he was entitled to
benefits.  *Id.* However, the supreme court reversed, finding
the accident did not arise in the course of employment.

Specifically, the court stated: "The causative danger here was the defective steering apparatus on the claimant's automobile, which we think was clearly independent of the relation of master and servant and not incidental to the character of the business or the employment." *Id.* at 269, 140 S.E.2d at 175. The court further noted that "[t]he only connection which the employer had with the particular accident was that the employer cooperated with and accommodated the claimant and his attorney in notifying the claimant and letting him off from work for the purpose of attending a hearing which claimant had sought for his own benefit." *Id.* at 270, 140 S.E.2d at 175.

Like the claimant in *Douglas,* Employer points out that Shuler was operating her personal vehicle at the time of the accident and was exposed only to the dangers of driving an automobile on a public road. However, unlike the claimant in *Douglas,* Shuler was traveling from a medical visit, albeit unplanned, that was necessitated by her previous compensable injury. Because she was bound by the Workers' Compensation Act, she was required to visit this particular doctor's office in Columbia or she risked losing her benefits. See S.C.Code Ann. § 42–15–60 (1985) ("The refusal of an employee to accept any medical, hospital, surgical or other treatment when provided by the employer or ordered by the Commission shall bar such employee from further compensation until such refusal ceases ... unless in the opinion of the Commission the circumstances justified the refusal....").

Not only is *Douglas* distinguishable from the case at hand, but so too are all reported South Carolina cases. Thus, we consider jurisprudence from other jurisdictions to determine the compensability of additional injuries a claimant sustains while journeying to or from a doctor's office for a previous work-related injury. Although there is authority to the contrary,[2] most states that have addressed this issue find an injury suffered during such a journey is compensable. 1

---

2. *See, e.g., Wyoming ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn,* 951 P.2d 373, 377–78 (Wyo.1997) (denying benefits to claimant who died while returning from treatment for a compensable injury because "[t]he accident was not a hazard of her employment that she would not have been subjected to apart from her job nor did it result from a risk reasonably incident to the character of the business"); *Lee v. Industrial Comm'n,* 167 Ill.2d 77, 212 Ill.Dec. 250, 656 N.E.2d 1084, 1088 (1995) (refusing to award benefits for injuries claimant sustained while cross-

Arthur Larson & Lex K. Larson, *Workers' Compensation Law*, § 10.07 (Compensable Consequences) (2004).

In *Taylor v. Centex Constr. Co.*, 191 Kan. 130, 379 P.2d 217 (1963), the Kansas Supreme Court held that an injury sustained by an employee while traveling to medical treatment for a prior compensable injury arose out of and in the course of employment. In *Taylor*, claimant suffered an eye injury while working for Centex Construction as a cement mason foreman. Centex allowed him to visit a doctor for his injury, which claimant did. On his way back from the doctor, claimant had his truck greased at his son's service station and ate lunch. He then stopped by a convenience store, purchased a drink, and when he was within two miles of his job site, he collided with a road sweeper, sustaining serious injuries to his knee. *Id.* at 218. In finding that claimant's knee injuries were compensable, the Kansas Supreme Court noted that pursuant to the Workers' Compensation Act, an employer is under a duty to furnish medical care. Likewise, an employee is under a duty to submit to reasonable medical treatment. These statutory duties become part of the employment contract by implication, and therefore, an accidental injury sustained while en route to or from treatment for a compensable injury is work related because it is made pursuant to contractual obligations. *Id.* at 221.

We agree with the reasoning set forth in *Taylor*. Under the law of workers' compensation, employers must furnish, and employees must submit to, medical treatment for work-related injuries. *See* S.C.Code Ann. §§ 42–15–60 and 42–15–80 (Supp.2004). Thus, when an employer authorizes an employee to seek medical attention for a prior injury and the employee sustains additional injuries while fulfilling her obligation to submit to medical treatment, such additional injuries

ing the street after receiving treatment from an employer-approved medical clinic because the claimant was under no duty or obligation to receive treatment at the time he did); *Gayler v. North Am. Van Lines*, 566 N.E.2d 84 (Ind.Ct.App. 4 Dist.1991) (denying compensation for injuries claimant suffered while on her way to pick up a piece of medical equipment that was part of her prescribed treatment for a previous work-related accident; the court found that even though the employer agreed to pay for the medical equipment and had authorized treatment, the intervening negligence of a third party broke the causal link between the claimant and her employment).

are sufficiently causally related to employment to be compensable. *See also Font v. New York City Bd. of Educ.*, 170 A.D.2d 928, 566 N.Y.S.2d 754, 755 (1991) (holding that injuries claimant suffered while traveling to a doctor's office for treatment of another compensable injury were work-related and compensable); *Moreau v. Zayre Corp.*, 408 A.2d 1289, 1293–94 (Me.1979) (awarding benefits to claimant who was injured in an automobile accident while driving home after receiving medical treatment for a previously compensable hand injury because the employee had a correlative duty to accept medical treatment for the initial compensable injury and therefore was fulfilling an implied duty of the employment contract when she got into the accident); *Berro v. Workmen's Comp. Appeal Bd.*, 165 Pa.Cmwlth. 298, 645 A.2d 342, 345 (1994) (finding that "but-for" driving to his physical therapist for treatment of his work-related injury, claimant would not have been in the car accident that caused additional injuries, and therefore the additional injuries were compensable).[3]

■ Here, Shuler's fatal accident occurred while she was fulfilling her duty to submit to treatment for a previous compensable injury. Thus, her subsequent injuries arose out of and were in the scope of her employment.

## II. "Going and Coming" Rule

■ Employer next argues the circuit court erred by finding Shuler's accident fell within an exception to the "going

---

**3.** We acknowledge that some states, such as Florida, have a statute addressing this very issue. *See* Fla. Stat. § 440.092(5) ("Injuries caused by a subsequent intervening accident arising from an outside agency which are the direct and natural consequence of the original injury are not compensable unless suffered while traveling to or from a health care provider for the purpose of receiving remedial treatment for the compensable injury."). Notably, Florida's statute was enacted in 1990, and prior to its enactment, Florida courts had already awarded benefits to claimants who suffered injuries en route to medical treatment for a previous compensable injury. *See, e.g., All American Wheel World, Inc. v. Gustafson*, 499 So.2d 876, 877 (Fla.App.1 Dist.1986) (finding that the injury claimant sustained in an automobile accident while on his way to receive treatment from a chiropractor for a previous compensable injury was also compensable); *see also IMC Phosphates Co. v. Prater*, 895 So.2d 1263, 1269 (Fla.App.1 Dist.2005) (discussing section 440.092(5) and the date of its enactment). Likewise, those jurisdictions cited above which favor compensation have made their rulings despite having no statute directly on point.

and coming" rule. Under this rule, an employee who is going to or coming from work is generally not considered to be engaged in performing any service growing out of or incidental to employment, and therefore, an injury sustained by accident at such a time does not arise out of and in the course of employment. *McDaniel v. Bus Terminal Rest. Mgmt. Corp.*, 271 S.C. 299, 247 S.E.2d 321 (1978). As discussed above, we believe Shuler was, at the time of her accident, performing a service that was incidental to her employment in that she was fulfilling her obligation under the Workers' Compensation Act to submit to treatment. Thus, her injuries were sufficiently related to her employment so as to place the accident outside the parameters of the "going and coming" rule.

### III. Intervening Personal Deviations

Finally, Employer argues the award of death benefits should be reversed because of the intervening personal deviations between the time Shuler left the doctor's office and the time of her accident. We disagree.

The full commission found that even if Shuler stopped by the grocery store after her treatment in order to purchase supper for her family, such a deviation was "insubstantial and would be covered under the allowed 'personal comfort' [doctrine]." The circuit court found this ruling was erroneous because the application of the personal comfort doctrine "has consistently been limited to imperative acts such as eating, drinking, smoking, seeking relief from discomfort, preparing to begin or quit work, and resting or sleeping." *Osteen v. Greenville County School District*, 333 S.C. 43, 47–48, 508 S.E.2d 21, 23 (1998). However, the circuit court found Shuler's injuries were compensable even in light of her deviation to the store because at the time of her accident, she had returned to the route of the business trip.

Upon reviewing the record, we note the commission never actually found Shuler had deviated from her route to go shopping. Rather, the commission first found that the time of the accident could never be clearly established and that Shuler may have stopped to eat dinner between 6:30 p.m. and 7:30 p.m. Only after making those findings did the commission go

on to find that *even if* Shuler did stop by the grocery store to buy dinner for her family, such a trip would be encompassed by the personal comfort doctrine.

There is substantial evidence in the record supporting the commission's findings. *See Gibson v. Spartanburg School Dist. No. 3*, 338 S.C. 510, 516, 526 S.E.2d 725, 728 (Ct.App. 2000) ("In an appeal from the Commission, this Court may not substitute its judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law."). No one witnessed Shuler's accident, and as the Good Samaritan who called in the accident testified, numerous cars drove around Shuler's wrecked vehicle without calling authorities. Thus, her car may have been on the road for a substantial period of time before Trooper Kyzer investigated the scene. Furthermore, although Trooper Kyzer testified that Shuler's daughter told him her mother planned to stop at the grocery store after her doctor's visit, when Shuler's daughter testified, she denied ever saying such a thing. There was no evidence presented regarding how long the shopping bags had been in Shuler's backseat or whether the bags contained perishable items. Thus, there is substantial evidence to support a finding that Shuler did not deviate from her business trip.

### CONCLUSION

Based on the foregoing, we find Shuler's death resulted from an accident arising from and in the course of her employment. The going and coming rule does not preclude her from receiving benefits, and there is substantial evidence Shuler did not deviate from her route home. Accordingly, the award of benefits is

**AFFIRMED.**

STILWELL, J., concurs, and KITTREDGE, J., dissents in a separate opinion.

KITTREDGE, J., dissenting:

I respectfully dissent, for I believe that Linda Shuler's November 18, 2001, motor vehicle accident—following the unscheduled doctor's appointment—did not arise out of and in

the course of her employment with Gregory Electric. I would reverse.

Since the essential facts are undisputed, the question before us is one of law. *Gibson v. Spartanburg Sch. Dist. No. 3*, 338 S.C. 510, 517, 526 S.E.2d 725, 729 (Ct.App.2000).

The disposition of this appeal requires a proper understanding and application of the statutory requirement that an injury, to be compensable, must "aris[e] out of and in the course of the employment." S.C.Code Ann. § 42–1–160 (Supp. 2004). I find our supreme court's decision in *Douglas v. Spartan Mills, Startex Division*, 245 S.C. 265, 140 S.E.2d 173 (1965), persuasive, both factually and legally.

There, David Douglas filed a workers' compensation claim against his employer, Spartan Mills. The Industrial Commission, predecessor to the Workers' Compensation Commission, scheduled a hearing at the Spartanburg Courthouse on the morning of September 20, 1961. Douglas misread the hearing notice and reported for work that morning at the Startex plant. A supervisor notified Douglas of the hearing about one hour before the hearing was to begin. Douglas left work, drove home to change clothes and then headed to the courthouse, about a three-mile drive. Douglas was injured in a motor vehicle accident en route to the courthouse. The accident was caused by a defective steering mechanism. Douglas filed a claim for compensation as a result of the September 20 accident. *Id.* at 267, 140 S.E.2d at 174.

The Commission found Douglas had sustained a compensable injury by accident, arising out of and in the course of employment. *Id.* at 266, 140 S.E.2d at 173. The circuit court affirmed. Our supreme court reversed and held, as a matter of law, that Douglas's injury did not arise out of and in the course of his employment:

While the Workmen's Compensation Act has to be construed liberally in favor of coverage, and doubtful cases should be resolved in favor of the injured employee, we think the accident here clearly did not arise out of and in the course of the employment of the claimant, within the

intent of the legislature in enacting the Workmen's Compensation Act.

*Id.* at 270, 140 S.E.2d at 175–176

The court's discussion of the separate elements—"arising out of" and "in course of employment"—is helpful in determining the compensability of Shuler's accident following her visit to the doctor on November 18, 2001. Both elements must be present for an accident to be compensable, and they must be concurrent and simultaneous. *Id.* at 268, 140 S.E.2d at 174. " '[T]he words 'arising out of' refer to the origin of the cause of the accident, while the words 'in the course of employment,' have reference to the time, place and circumstances under which the accident occurs.' " *Id.* at 268–69, 140 S.E.2d at 175 (quoting *Eargle v. S.C. Elec. & Gas Co.*, 205 S.C. 423, 32 S.E.2d 240 (1944)).

An injury "arises out of" the employment when a causal connection exists between the conditions under which the work is required to be performed and the resulting injury. *Douglas*, 245 S.C. at 269, 140 S.E.2d at 175 (quoting *In re Employers' Liab. Assurance Corp.*, 215 Mass. 497, 102 N.E. 697 (1913)). The court described this causal link as follows:

Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence.

*Id.*

With respect to the requirement that the accident arise "in the course of employment," the court explained:

An injury arises in the course of employment within the meaning of the Workmen's Compensation Act when it occurs within the period of employment at a place where the employee reasonably may be in the performance of his duties, and while he is fulfilling those duties, or engaged in doing something incidental thereto.

*Douglas*, 245 S.C. at 269, 140 S.E.2d at 175 (quoting *Fowler v. Abbott Motor Co.*, 236 S.C. 226, 113 S.E.2d 737 (1960)).

Applying these rules of reason to Douglas's accident while en route from work to his workers' compensation hearing, the supreme court found the accident "was clearly not a compensable one. The causative danger here was the defective steering apparatus on the claimant's automobile, which we think was clearly independent of the relation of master and servant and not incidental to the character of the business or the employment." *Douglas*, 245 S.C. at 270, 140 S.E.2d at 175.

I think it is at least equally clear that Shuler's November 18 accident, following her doctor's visit for a prior work-related injury, lacked the requisite causal connection to her employment and was in no manner incidental to the character of her employment with Gregory Electric. Under *Douglas*, the accident must result from some exposure peculiar to the employment, and not a hazard to which all workers are equally exposed. *Id.* at 269, 140 S.E.2d at 175. Additionally, the injury arises in the course of employment only when it occurs at a place where the employee reasonably may be in the performance of her duties or "something incidental thereto." *Id.* The accident occurred while Shuler was driving her own vehicle on a public road. Her duties as an employee did not require anything of her at the time and place of the accident. *See id.* at 270, 140 S.E.2d at 175. Instead, the doctor's visit was required only for compensation under the statute.

The majority assigns significance to an injured employee's statutory obligation to pursue required medical treatment as a condition of continued entitlement to workers' compensation benefits. I do not view this "duty to submit to treatment" as a sufficient nexus to employment to satisfy the "arising out of" and "in course of employment" elements.

An employee does not need a statute to know there is a duty to report to work, for an employee must show up at work to keep her job. Yet we readily acknowledge that under normal circumstances the "going and coming" rule would preclude recovery to an employee injured while traveling to or from work. *See McDaniel v. Bus Terminal Rest. Mgmt. Corp.*, 271 S.C. 299, 302, 247 S.E.2d 321, 322 (1978) (holding that pursuant to the "going and coming" rule, injuries sustained while an employee is going to or coming from work generally are not compensable because the injuries do not arise out of and in the course of employment.) The rationale for the rule is straightforward—traveling risks are those shared by public.

Were Shuler going to or from her job at Gregory Electric, I do not believe we would entertain the notion that an accident was work-related. Application of the "going and coming" rule would foreclose such a claim. Since the court today professes continued adherence to the "going and coming" rule, it seems to me that today's policy decision—the finding of a compensable, work related injury—would serve to favor those going to or from a doctor's visit over those employees actually working who must travel to and from work. I do not understand the policy reasons for elevating the rights of those going to and from the doctor's office over workers traveling to and from work.

I believe that the *Douglas* holding and analysis controls here, and I would not resort to canvassing the law in other states, where the decisions predictably go both ways. I would follow the lead of our supreme court in *Douglas*:

If it is the intent of the legislature to include within the terms of the Workmen's Compensation Act employees injured while engaged in activities not in the course of their employment, though arising indirectly by reason of their employment, then the Act will have to be accordingly amended.

*Douglas*, 245 S.C. at 270–271, 140 S.E.2d at 176 (quoting *Fountain v. Hartsville Oil Mill*, 207 S.C. 119, 32 S.E.2d 11 (1945)). *See also Wigfall v. Tideland Utils., Inc.*, 354 S.C. 100, 110, 580 S.E.2d 100, 105 (2003) (holding that because workers' compensation statutes provide an exclusive compensatory sys-

tem in derogation of common law rights, they must be strictly construed, leaving ambiguities to be resolved by the legislature).

The General Assembly has yet to accept this now 40–year–old invitation to amend the Workers' Compensation Act to provide for coverage in such circumstances. Nor has our supreme court sought to retreat from its holding in *Douglas*. Based on my view of prevailing South Carolina law, I would reverse the award of worker's compensation benefits to the estate of Linda Shuler.