677 S.E.2d 28

**Robert K. McCUEN, Respondent,**

v.

**BMW MANUFACTURING CORPORATION and Twin City Fire Insurance Company, Appellants.**

No. 4531.

Court of Appeals of South Carolina.

Heard Feb. 18, 2009.
Decided April 15, 2009.

Samuel C. Weldon, of Greenville, for Appellants.

Kathryn Williams, of Greenville, for Respondent.

SHORT, J.

BMW Manufacturing Corporation (BMW) appeals the circuit court's order upholding the Appellate Panel of the Workers' Compensation Commission's (Appellate Panel) finding that Robert McCuen sustained a compensable neck injury arising out of and in the course of his employment with BMW and awarding him benefits for his injury. We reverse.

## FACTS

McCuen began working for BMW as a dent repair technician in April of 2000. McCuen inspected and repaired minor dents and other imperfections on vehicles as they neared completion on the assembly line. As a dent technician, he utilized stationary fluorescent lights to detect imperfections. Once he detected an imperfection, McCuen used various tools to correct the dent. McCuen stated it was BMW's preference to correct the dents on the assembly line [1] and, as a result, he assumed awkward positions in an attempt to "push the dents out." According to McCuen, as a dent technician, he used both of his hands and applied a continuous force.

McCuen testified that prior to working for BMW, he had never experienced any problems with his neck, hands, arms, or wrists. However, on October 26, 2001, he began to develop pain in his right wrist while still employed with BMW. McCuen testified he reported the pain to BMW's infirmary. Consequently, BMW transferred McCuen to another area on the assembly line. He began complaining of pain in his right forearm and he was transferred to a computer data entry position. Shortly thereafter, on November 13, 2001, McCuen left BMW for medical leave and did not return to work.[2] After leaving BMW, McCuen began to complain of pain in his left wrist.

---

1. However, if a vehicle had a large dent, the repairs were made off the assembly line.

2. BMW terminated his employment in May of 2002.

McCuen's problems with both of his wrists continued, and he sought additional medical treatment. According to McCuen, several doctors were unable to diagnose the problem with his wrists. Ultimately, McCuen was referred to Dr. Joseph Kutz, a hand specialist in Kentucky. Eventually, Dr. Kutz diagnosed McCuen with bilateral carpal tunnel syndrome. During the summer of 2002, Dr. Stephen Gardner, a Greenville neurosurgeon, performed carpal tunnel surgery on both of McCuen's wrists. Dr. Gardener released McCuen from his care in September 2002. However, in December 2002, McCuen made an appointment with Dr. Gardner for problems with his neck, and underwent surgery on January 13, 2003. McCuen admitted his neck problems did not develop until months after he left BMW and he was unable to explain how he hurt his neck.

Before, during, and after McCuen's employment with BMW, McCuen owned and operated a landscaping business. McCuen testified at the hearing that he "had two guys that did most of the work," and sometimes he helped. However, at his deposition, he stated he did not have any employees, but he had "a friend that helped [him] some." Diana German, a former co-worker, testified McCuen worked in her yard on two separate occasions after he left BMW. Another former co-worker, Heather Lazo, also testified McCuen told her he was doing most of the landscaping himself. Additionally, McCuen assisted in the organization of a dent removal business after he left BMW.

McCuen filed a claim for benefits under the South Carolina Workers' Compensation Act. S.C.Code Ann. §§ 42–1–10 to 42–19–40 (1976 & Supp.2008). This case originally came before the single commissioner, who found McCuen sustained compensable injuries to his neck, upper extremities, and hands by accident under South Carolina Code Section 42–1–160. Specifically, the single commissioner found McCuen had no pain or other difficulties with his neck, upper extremities, and hands prior to his employment with BMW. The commissioner specifically noted McCuen's job as a dent technician "involved forcing his neck, arms, and entire body into very awkward positions. . . ." Further, the single commissioner stated McCuen's "neck and entire upper extremity symptoms are associated manifestations of his condition."

BMW appealed the single commissioner's decision to the Appellate Panel, and the Appellate Panel affirmed the single commissioner's decision, sustaining the order in its entirety. Subsequently, BMW appealed the Appellate Panel's decision to the circuit court, challenging only the portion pertaining to a sustained injury to the neck. The circuit court affirmed the Appellate Panel's order, finding substantial evidence existed supporting the "finding that [McCuen] sustained a compensable injury to his neck as a result of the injury by accident." This appeal followed.

## STANDARD OF REVIEW

The South Carolina Administrative Procedures Act (APA) establishes the standard for judicial review of decisions by the Appellate Panel. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 134–35, 276 S.E.2d 304, 306 (1981). Under the scope of review established in the APA, this court may not substitute its judgment for that of the Appellate Panel as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law. *Stone v. Traylor Bros., Inc.*, 360 S.C. 271, 274, 600 S.E.2d 551, 552 (Ct.App. 2004).

The substantial evidence rule governs the standard of review in a workers' compensation decision. *Frame v. Resort Servs. Inc.*, 357 S.C. 520, 527, 593 S.E.2d 491, 494 (Ct.App.2004). The Appellate Panel's decision must be affirmed if supported by substantial evidence in the record. *Shuler v. Gregory Elec.*, 366 S.C. 435, 440, 622 S.E.2d 569, 571 (Ct.App.2005). However, an appellate court can reverse or modify the Appellate Panel's decision if the appellant's substantial rights have been prejudiced because the decision is affected by an error of law or is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." S.C.Code Ann. § 1–23–380(A)(6) (2005); *Bursey v. S.C. Dep't of Health & Envtl. Control*, 360 S.C. 135, 141, 600 S.E.2d 80, 84 (Ct.App.2004).

"Substantial evidence" is not a mere scintilla of evidence nor the evidence viewed blindly from one side of the case, but is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the

administrative agency reached or must have reached in order to justify its action.

*Lark,* 276 S.C. at 135, 276 S.E.2d at 306.

"[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Palmetto Alliance, Inc. v. S.C. Pub. Serv. Comm'n,* 282 S.C. 430, 432, 319 S.E.2d 695, 696 (1984). In workers' compensation cases, the Appellate Panel is the ultimate finder of fact. *Shealy v. Aiken County,* 341 S.C. 448, 455, 535 S.E.2d 438, 442 (2000). When the evidence is conflicting over a factual issue, the findings of the Appellate Panel are conclusive. *Hargrove v. Titan Textile Co.,* 360 S.C. 276, 290, 599 S.E.2d 604, 611 (Ct.App.2004). The final determination of witness credibility and the weight to be accorded evidence is reserved for the Appellate Panel. *Bass v. Kenco Group,* 366 S.C. 450, 458, 622 S.E.2d 577, 581 (Ct.App.2005).[3]

## LAW/ANALYSIS

BMW argues the Appellate Panel erred by finding McCuen suffered a compensable injury to his neck arising out of and in the course of his employment because it is not supported by substantial evidence. We agree.

For an injury to be compensable, it must arise out of and in the course of employment. S.C.Code Ann. § 42–1–160(A) (Supp.2008). An injury arises out of employment if a causal relationship between the conditions under which the work is to be performed and the resulting injury is apparent to the rational mind, upon consideration of all the circumstances. *Rodney v. Michelin Tire Corp.,* 320 S.C. 515, 518, 466 S.E.2d 357, 358 (1996). "The claimant has the burden of proving facts that will bring the injury within the workers'

---

**3.** The South Carolina General Assembly recently overhauled South Carolina's Workers' Compensation laws. These statutory changes affect claims for injuries occurring on or after July 1, 2007. *See* 2007 S.C. Acts 111, Part IV, Section 2 ("Except as otherwise provided for in this act, this act takes effect July 1, 2007, or, if ratified after July 1, 2007, and except [as] otherwise stated, upon approval by the Governor and *applies to injuries that occur on or after this date.*") (Emphasis added.) The injuries in this case began on October 26, 2001.

compensation law, and such award must not be based on surmise, conjecture or speculation." *Clade v. Champion Labs.*, 330 S.C. 8, 11, 496 S.E.2d 856, 857 (1998).

Here, the sole issue on appeal is whether McCuen's neck injury arose out of and during the course of his employment with BMW.[4] Most of the testimony and medical reports presented at the hearing before the single commissioner were devoted to McCuen's injury to his hands and wrists. There is little reference and discussion of his neck injury in the Record on Appeal. Additionally, McCuen testified he first experienced soreness in his neck after he stopped working at BMW. McCuen stated he thought the problems with his hands and arms developed because his job as a dent technician required him to continually apply pressure on the joints in his hands. When asked what he believed caused the neck injury, he responded: "I don't know what, exactly, that was. I think it had to do with something from the way I was in the awkward positions." On cross-examination, McCuen admitted he did not know how he hurt his neck. Furthermore, McCuen testified he did not experience any neck problems until three or four months after he had stopped working for BMW. McCuen also did not report any problems with his neck to any physician until an appointment with Dr. Kutz in February of 2002.

The portions of the record McCuen relies upon in his brief to support his substantial evidence argument do not specifically assert his neck injury arose during and in the course of his employment with BMW. Instead, the record indicates McCuen injured his hands and wrists while working as a dent technician at BMW, but he did not know how or when he injured his neck. In fact, Dr. Gardener's medical reports reflect most of his time and attention was focused on the care and treatment of McCuen's wrists. While there is some mention of neck pain in the reports, they do not indicate McCuen's neck problems resulted from his carpal tunnel syndrome or the work injury to his wrists. In a letter responding to a telephone conversation with McCuen's attorney, Dr. Gardner clarified that McCuen's "carpal tunnel syndrome while aggravated by his activity in the auto industry was not the cause of it, but

---

4. BMW does not dispute the compensability of McCuen's wrist injuries.

certainly delayed onset is very typical." Dr. Gardner did not indicate McCuen's neck injury was caused or aggravated by his employment with BMW. The record also confirms McCuen operated his own landscaping company before, during, and after he worked for BMW. McCuen testified that in his landscaping business, he trimmed bushes, over-seeded yards, and cut lawns; however, he had to dissolve the company in March 2002 because of the pain in his hands. Two former co-workers testified McCuen continued doing landscaping work himself after he left BMW. The work included blowing leaves and cutting down a large bush. These incidents occurred before McCuen began experiencing neck pain.

## CONCLUSION

We find substantial evidence does not exist in the record to support the Appellate Panel's finding that McCuen's neck injury arose out of and during the course of his employment with BMW. Therefore, the circuit court's order is

**REVERSED.**

THOMAS and GEATHERS, JJ., concur.